## B. F. Van Kannel, Plaintiff in Error, v. L. S. Higley, Defendant in Error.

## Gen. No. 16,394.

1. Damages—*provision for liquidated.* Whether a sum stipulated as liquidated damages for breach of contract is to be regarded as such or as a penalty depends upon the intention of the parties, to be determined from the entire provisions of the contract.

2. Liquidated damages—*how determined.* If the entire contract discloses that the parties calculated and in good faith fixed a certain sum as compensation and intended that that sum should be paid and accepted as the damages and it is reasonable, the courts should allow it as liquidated damages.

3. Penalty—*when.* If the sum fixed in the contract is not shown to be a calculation and settlement of the actual damages to be paid, but a sum fixed as security or penalty for the breach of the contract, then it is to be regarded as a penalty.

4. Damages—*provision for penalty.* Where a contract states that upon failure to complete a certain dwelling house by a certain date the promisor agrees "to forfeit and pay" six hundred dollars as "liquidated damages," such stipulation will be regarded as a penalty where it further appears that no damages were inflicted by such failure to perform.

5. Contracts—*liquidated damages or penalty.* In doubtful cases a sum stipulated for the breach of a contract will be considered as a penalty.

Error to the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed August 12, 1912. Rehearing denied August 27, 1912.

WALTER J. MILLER, for plaintiff in error.

UNDERWOOD & SMYSER, for defendant in error; ARTHUR A. BASSE, of counsel.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

This suit was brought by Van Kannel, plaintiff in error, to recover the sum of $600, as liquidated damages against Higley, defendant in error, upon the following contract, dated June 26, 1907, and signed by said Higley, to-wit:

"MR. B. F. VAN KANNEL,

Valparaiso, Ind.

DEAR SIR:

I remember the fact that on the 8th day of August, 1905, I made you a proposition in writing that if you would build your residence in Chautauqua Park, Valparaiso, Indiana, beginning within the next twenty days after that date, that I would build my residence in the above named Park on or before Jan. 1, 1907; that not having complied with my proposition, for reasons which are not necessary to name, we afterwards agreed mutually that the time in which I was given in which to build my residence should be extended to June 1, 1908; provided, however, that I was to build the cellar and the foundation by June 15, 1907; that said extension was agreed upon Feb. 19, 1907. I acknowledged the fact, too, that you had accepted my proposition of August 8th, 1905, and had constructed your residence in pursuance to that understanding.

Now, in consideration of the fact that I have not complied with my agreement heretofore and that you will waive any claim which you have for damages on account of my failure to comply with my proposition, I now undertake and agree that I will construct the

residence referred to in my proposition, costing not less than $5500.00, and have the same completed on or before Dec. 15th, 1908. I consider this offer and the punctual fulfillment thereof as due to you on account of my failure to perform my former agreement and proposition, and upon failure on my part to do as herein agreed and complete said dwelling by Dec. 15, 1908, I agree to forfeit and pay to you as liquidated damages, the sum of Six Hundred Dollars ($600.00)."

The evidence, in substance, is that plaintiff in error, beginning in 1905, in pursuance of the agreement recited in the first part of the foregoing contract, built a residence in said Chautauqua Park at an actual cost of $3,500 outside of his own time employed thereon, and that he sold the same about September 15, 1908, for $3,900; that he owned in said Park while building said house three lots, on two of which the house was built; that he owned no lots in said park, December 15, 1908, all of said lots being sold in September, 1908, but that he held a mortgage on the house at the time of the trial for $3,000, and that the house was then worth $3,900; that shortly after the date of the contract sued on defendant in error dug the cellar and put in a foundation on the site on which he agreed to build, from 700 to 1,100 feet away from plaintiff in error's said house, but up to the time of the trial had failed to erect a $5,500 residence, as he had contracted to do.

In a trial before the court without a jury judgment was rendered for plaintiff in error for one cent as damages, the court holding that the sum of $600 sued for was a penalty and not liquidated damages.

It is clearly stated by the parties in this cause that the only controversy in this court is as to whether the amount stipulated in the contract should be held as liquidated damages or as a penalty.

It has been frequently ruled by our Supreme Court that whether a sum stated in a contract is to be regarded as a penalty or as liquidated damages depends

upon the intention of the parties to be determined from the entire provisions of the contract. Westfall v. Albert, 212 Ill. 68; Hennessy v. Metzger, 152 Ill. 505; Goodyear Co. v. Selz, Schwab & Co., 157 Ill. 186.

In the case of Streeper v. Williams, 48 Pa. 450, it is said: "The modern authorities attach greater importance to the meaning and intention of the parties; yet the intention is not all-controlling, for in some cases the subject-matter and surroundings of the contract will control the intention where equity absolutely demands it." The same conclusion stated by the Pennsylvania court seems to have been reached by our Supreme Court in the cases of Radloff v. Haase, 196 Ill. 365, and Scofield v. Tompkins, 95 Ill. 190.

Much of the trouble encountered in harmonizing the authorities upon this point will disappear, if we will remember that the real intention to be sought for is as to whether or not the parties, after having mutually and in good faith considered and calculated the actual damages, intended the sum fixed by their contract to be accepted as compensation for the breach of the contract, or merely as security or penalty for the breach thereof. It ought to be permissible to contracting parties to avoid all litigation and settle the question as to the amount of damages that shall be paid for the violation of their contracts, subject only to the condition that they do in good faith settle such damages on the basis simply of what they mutually determine to be reasonable and just compensation. Sedgwick, after thoroughly considering the authorities bearing upon this question, lays this down as the general rule, to-wit: "Whenever the damages were evidently the subject of calculation and adjustment between the parties, and a certain sum was agreed upon and intended as compensation, and is in fact reasonable in amount, it will be allowed by the court as liquidated damages." Sedgwick on Damages (8th Ed.), Sec. 405.

In determining the intent of the parties to the con-

tract courts must look to the entire instrument, and give such construction that every clause shall have some effect, if possible, and for such purpose will, so far as practicable, view the contract from the position of the parties at the time it was made, in order to understand their language in the sense in which it was used, and will permit examination into the question of damages to determine whether or not the enforcement of its provisions would work a hardship upon the obligor. Westfall v. Albert and Radloff v. Haase, *supra.*

The foregoing authorities further lay down as rules of construing such contracts that in doubtful cases courts should be inclined to treat the stipulations as penalties and hold that the real damages should be inquired into. Applying the usual rules of construction to the contract in hand, it may be said that there are just two reasons appearing why the damages specified should be held as liquidated or compensatory damages, as distinguished from damages named as penalties. The first is that they are denominated as liquidated damages by the contract itself, and in the second place the damages themselves at the time the contract was made, independently of the stipulation, were wholly uncertain and incapable, or very difficult, of being ascertained except by mere conjecture. See Westfall v. Albert, *supra.* But the effect of these two reasons appear to be more than offset by the use of the words "forfeit and pay," and by the further fact that plaintiff in error is not shown to have suffered any actual damages by the evidence, and under the reasoning of Radloff v. Haase, *supra,* to construe the contract as for liquidated damages would work absurdity and oppression. The word "forfeit" signifies the incurring of a forfeiture or penalty and is antagonistic to the idea of mere payment of compensation for damages arising from the breach of a contract. Under the evidence plaintiff in error is not an owner of any property in the addition where he had built his house, but

is a mere mortgagee with ample security for the note due him, and therefore there can be no presumption that he will become an owner of any property there by reason of his mortgage. His property he sold in September, 1908, for a profit, and at that time defendant in error appears to have put in the foundation of the house he had contracted to build. In other words, the purchaser of plaintiff in error's property may be presumed to have supposed, if he made any suppositions at all in that regard, that defendant in error would complete his house that he had contracted to build and had started. Hence, we say the court was authorized by the evidence to find that plaintiff in error sustained no actual damages, the proper measure of damages, when considering his actual loss, being the depreciation in the market value of his premises by reason of defendant in error's failure to carry out his contract to build. The time or labor spent by plaintiff in error in the building of his house could in no event be figured in estimating his actual damages. That time was only evidence to increase the cost price of his building, all of which time the evidence shows belonged to and was paid for in full by the Company for whom he was working.

There are other reasons why the $600 mentioned in the contract should not be regarded as stipulated compensation or liquidated damages for failure to build the house by December 15, 1908. The contract itself plainly says that all claim by the plaintiff in error for damages for failure of defendant in error to build prior to the date of the contract on which suit is brought is waived. Such damages, if any, were merely recited as part of the consideration for the contract in suit and all claim therefor expressly waived. In other words, the real contract in this case to be construed is simply the contract following and including the words, "I now undertake and agree that I will construct the residence," and the facts or the recitals

of the facts preceding these words only affect the construction of the contract as mere recitals of the consideration and reasons for making the contract.

The contract in short then is that upon failure to complete said dwelling house by December 15, 1908, appellee agreed to forfeit and pay $600 as liquidated damages. For delay in completing building contracts or other tasks parties may liquidate the damages, but the usual way in which that is done by contract is to stipulate that the one agreeing to build shall "forfeit or pay" a stipulated reasonable sum for every day or week the completion of the work is delayed beyond the time named. But a large sum agreed to be paid at once if performance is delayed beyond a certain date is not allowed as liquidated damages, but is usually construed as a penalty. Sedgwick on damages (8th Ed.), Sec. 419.

The words in the contract, "I consider this offer and the punctual fulfillment thereof as due to you on account of my failure to perform my former agreement," are referred to as evidence that compensatory damages only were agreed on in the contract. We do not so regard it. The words, thus quoted, clearly referred to the offer "to build not less than a $5,500 house" by Dec. 15, 1908, and do not have reference to the promise to pay the $600.

The contract itself shows clearly, we think, that the $600 named in the contract as damages must be considered as a penalty or security for the fulfillment of the contract to build. By it, if the contract to build was not fulfilled by the 15th of December, $600 was to be the penalty and the penalty would not have been increased or lessened if he had fully completed the building on any day after that date. Such a contract could not be very well viewed as based solely upon compensation for delay in building or as compensation merely in case of a total failure to build, as it makes no specific reference to such failures, nor does it make

any distinction in the calculation or fixing of damages for a single day's delay in building and in a total failure to build.

For the reasons aforesaid, the judgment of the lower court is affirmed.

*Judgment affirmed.*