**August A. Bauer et al., Plaintiffs-Appellants, v. P. W. Sawyer et al., Defendants-Appellees.**

**Gen. No. 10,825.**

Second District.

May 19, 1955.

Rehearing denied June 10, 1955.

Released for publication June 14, 1955.

Butz, Blanke & Stith, of Kankakee, for appellants.

Eva L. Minor, and Maynard R. Bissonnette, both of Kankakee, for defendant-appellee.

MR. JUSTICE CROW delivered the opinion of the court.

This is an appeal from a decree dismissing an amended complaint for injunction to restrain the defendant, Dr. Sawyer, a medical doctor, from practicing medicine and surgery or radiology within the City of Kankakee, Illinois, and within a radius of twenty-five miles therefrom, for a period of five years from March 31, 1954.

The amended complaint is based upon an alleged violation of a partnership agreement, to which Dr. Sawyer is a party, by his allegedly breaking the contract on or about May 17, 1954, by opening a suite of offices for the practice of medicine and surgery in the City of Kankakee, the defendant Dr. Sawyer having on February 25, 1954, given notice of his withdrawal from the partnership concerned, effective March 31, 1954. The partnership agreement involves twelve medical doctors, including the defendant, Dr. Sawyer. Five of the doctors, parties to the partnership agreement, appear as plaintiffs, with seven of the doctors, parties thereto, as defendants. All of the defendants except the defendant Dr. Sawyer, admit the entire allegations of the complaint and ask no re-

181

lief against Dr. Sawyer or against any of the other parties to the suit.

It appears that the defendant Dr. Sawyer was paid by the partnership the sum of $7,451 in cash at the time of his withdrawal, and at the same time the remaining partners executed and delivered to the First Trust & Savings Bank of Kankakee, as escrow agent, in full payment of the balance due him, a promissory note signed by all the remaining partners for an additional $7,451 payable to the order of P. W. Sawyer, due on or before April 30, 1955, with interest at 3% per annum until paid, with the privilege of making prepayment of all or part thereof, and that that note is now in the possession of the escrow agent. Dr. Sawyer thereupon assigned all his interest in the partnership to the remaining partners. The defendant Dr. Sawyer in his answer admits the breach of the agreement. None of the eleven remaining partners, plaintiffs or defendants, ask the court to direct the escrow agent to deliver that note for $7,451 to them, the makers, for cancellation. The answer of the defendant Dr. Sawyer, while admitting the breach, does not waive the right to take the note, if unpaid pursuant to its terms, from the escrow agent in full payment of the designated value of $18,267.50, being the value of Dr. Sawyer's interest in the partnership at the time of his withdrawal in accordance with the terms of the agreement, the agreement providing that such voluntarily withdrawing partner should, under these circumstances, receive 80% of the value of his interest therein (the foregoing $7,451 cash and $7,451 note representing 80% of the $18,267.50 value of his interest).

The plaintiffs-appellants have raised several propositions or issues, but admit they may all be condensed into four questions—

1. Was the contract signed by Dr. Sawyer contrary to public policy?

182

2. Is the provision in the contract concerning the note a provision for penalty or liquidated damages?

3. Even if for liquidated damages, will injunction lie?

4. Does the fact that the five plaintiffs constitute less than a numerical majority of the partners deprive them of their equitable remedy?

The defendant-appellee Dr. Sawyer's theory of the case is that—

1. The provision in the contract against resumption of practice by a withdrawing partner is void as against public policy;

2. The provision in the contract whereby Dr. Sawyer will forfeit $7,451 upon certification by the remaining partners that he has resumed practice in Kankakee, is a provision for liquidated damages;

3. Under the agreement Dr. Sawyer had the alternative right to refrain from resuming practice or pay liquidated damages;

4. In view of the liquidated damages provision plaintiffs had an adequate remedy at law and injunction will not lie;

5. Plaintiffs as a minority of the remaining partners have no right to maintain the suit as individuals;

6. Plaintiffs did not allege or prove irreparable damages;

7. Plaintiffs on the whole record failed to show a clear case entitling them to injunctional relief.

This case was heard by the court on the pleadings and one stipulation, the pleadings being the amended complaint for injunction, the answer of the defendant, Dr. Sawyer, and the separate answers of the six other remaining partners who are made parties defendant and claim no relief against anyone, and the reply of plaintiffs to the answer of the defendant Dr. Sawyer to the amended complaint. The stipulation was to the effect that (at the time it was filed, October 15, 1954) there are approximately seventy medical doc-

tors actively engaged in the practice of medicine within twenty-five miles of and including the City of Kankakee, about ⅔rds of whom are general practitioners and that in that area the approximate population is 90,000. There was no other evidence.

Any determination of the issues in this case necessitates a review of some of the principal cases already decided in the State of Illinois and in other jurisdictions pertinent to the issues. Leading cases in Illinois having application to this case, and cited, are: Linn v. Sigsbee, 67 Ill. 75; Ryan v. Hamilton, 205 Ill. 191; Storer v. Brock, 351 Ill. 643; VanSant et al. v. Rose et al., 260 Ill. 401; and Hursen v. Gavin, 162 Ill. 377.

In Linn v. Sigsbee, supra, the agreement prevented a doctor from practicing within a certain township and within six miles of his then residence, being unlimited as to time; the court upheld the provision in a suit at law for damages and states, p. 80:

"The rule is well settled that any partial restraint of trade, or an agreement not to transact business at specified places, or with particular persons, or beyond a limited distance, or not to practice medicine within reasonable bounds, if there be some legal consideration for the restraint, will not invalidate the agreement. If there is a reasonable limitation only, and a consideration capable of supporting the agreement, it will be upheld. . . . The contract must be construed by the court and its reasonable character and the consideration for it, determined."

In Ryan v. Hamilton, supra, there was a suit for injunction to restrain the defendant, a physician, from practicing general medicine, in or within eight miles of the Village of Viola, Mercer county, Illinois, by reason of a provision forbidding such in a written contract relating to the sale of defendant's practice, and the court upheld the provision and, there being a consideration for the agreement, the court affirmed the decree

184

allowing an injunction and reversed the Appellate Court which had decided the other way. In its opinion the court said, pp. 197, 205:

"The principles of law applicable to this case are the same as those governing the specific performance of contracts in restraint of trade. That contracts in general restraint of trade are generally held to be illegal is beyond controversy. But the rule admits of well defined exceptions, and among the exceptions are contracts of the kind and character presented in this case. Contracts of this class, where the limitation as to territory is reasonable and there exists a legal consideration for the restraint, are valid and enforceable in equity, and in such cases relief by injunction is customary and proper. . . .

"In all cases it is the duty of courts to uphold, rather than to defeat, contracts of parties freely and fairly entered into. The modern trend of the law has been to recognize a person's property right in the good will of a business built up by him, and the tendency is to remove the restrictions formerly placed upon its sale. According to well established rules of law in this and other States, we regard the restrictions imposed by the contract in this case as reasonable, and we see no reason for regarding the decree entered by the lower court in this case as incorrect, and from what has already been said we are of the opinion that the judgment of the Appellate Court is erroneous and should be reversed."

The case of Storer v. Brock, supra, was a suit by plaintiff, a doctor, to recover from another doctor, defendant, money claimed to be due him under a written contract. The contract contained this clause:

"It is specifically understood and agreed that Dr. Storer agrees not to engage in the practice of medicine independently of Dr. Brock in Chicago, and that

185

when he returns to active practice with Dr. Brock, additional compensation for him shall be mutually agreed to."

The only contention made by Dr. Brock was that the contract was against public policy and void because it restrained Dr. Storer from practicing his profession in the City of Chicago for an unlimited time. Dr. Storer contended that the restriction placed by the contract on his right to practice his profession being limited, is not unreasonable and is not against public policy. The court referred to Linn v. Sigsbee, supra, and Ryan v. Hamilton, supra, held the restraint was limited or partial, not greater than reasonably necessary to protect the contract rights of Dr. Brock, and not against public policy, and the court allowed recovery, and said, p. 649:

"The contract is supported by a valuable consideration, the restraint imposed is limited or partial, and we do not regard the restraint to be greater than is reasonably necessary to protect the contract rights of Dr. Brock, or to be against public policy."

The court in VanSant et al. v. Rose et al., supra, affirmed the judgment of the Appellate Court which had affirmed a decree for injunction restraining the erection of a flat-building on certain real estate in violation of certain restrictive covenants in a deed from complainants to defendants, held that such covenants are lawful and valid and are in the class of covenants equity will enforce by enjoining a breach, that the right to enjoin a breach of restrictive covenants does not depend on damage to the covenantee by breach, but the mere breach is sufficient ground for interference by injunction, and, quoting from the case of Andrews v. Kingsbury, 212 Ill. 97, which affirmed an injunction against violation of a negative restrictive covenant as to engaging in business, says, p. 408:

"The general rule that a writ of injunction should only issue where there is an unquestionable right and where irreparable injury will be suffered, and there is no adequate remedy at law either on account of the insolvency of the defendant or for some other cause, is not applicable to this case. Courts of equity will, and frequently do, interpose by injunction, thereby indirectly enforcing the performance of negative covenants by prohibiting their breach; and where there is an express negative covenant courts of equity will entertain bills for injunctions to prevent their violation, even though the same will occasion no substantial injury or though the remedy be adequate at law."

And in Star Brewery Co. v. Primas, 163 Ill. 652, the court said, p. 658:

"Equity will interfere by injunction to prevent the breach of an express negative covenant, even though no substantial injury is caused by such breach. It will also so interfere, even though the damages, if any, may be recoverable at law."

In Southern Fire Brick & Clay Co. v. Garden City Sand Co. et al., 223 Ill. 616, the court, after referring to the early leading English case of Lumley v. Wagner, 1 De G. M. & G. 604, said, pp. 625, 626:

". . . This is not an implied negative agreement, but one clearly and directly expressed. . . .

"The right to an injunction for the enforcement of negative covenants in contracts is independent of the question as to whether an action at law will lie or not. . . ."

In the case of Hursen v. Gavin, supra, the defendant sold his interest in a livery and undertaking partnership to the plaintiff and agreed not to engage in such business in the City of Chicago for five years, and the court again held that that provision was valid, reasonable, limited in space and time, afforded simply a fair

187

protection to the legitimate interests of the other party, and the court affirmed a decree for injunction restraining the defendant from violating it. The court says, pp. 379–380, 382:

"It is charged, that the agreement of appellant not to engage in the livery and undertaking business in the City of Chicago for a period of five years is invalid as being in restraint of trade. Undoubtedly contracts in total restraint of trade are void, and upon two grounds, first, because of the injury to the public by being deprived of the industry of the party who is restrained, and, second, because of the injury to the party himself by being deprived of the opportunity to pursue his occupation and thereby support his family. A contract in restraint of trade is thus total and general, when by it a party binds himself not to carry on his trade or business at all, or not to pursue it within the limits of a particular country or State. Such a general contract in restraint of trade necessarily works an injury to the public at large and to the party himself in the respects indicated, and is, therefore, against public policy.

"But a contract, which is only in partial restraint of trade, is valid, provided it is reasonable and has a consideration to support it. (5 Lawson on Rights, Remedies and Practice, sec. 2403; 3 Am. & Eng. Ency. of Law, p. 882, and cases in notes; Oregon Steam Navigation Co. v. Winsor, 20 Wall. 64). The restraint is reasonable, when it is such only as to afford a fair protection to the interests of the party, in whose favor it is imposed. If the restraint goes beyond such fair protection, it is oppressive to the other party and injurious to the interests of the public, and, consequently, void upon the ground of public policy. A contract in restraint of trade, to be valid, must show that the restraint imposed is partial, reasonable and founded upon a consideration capable of enforcing the agreement. . . .

188

"Applying these authorities and the principles therein announced to the case at bar, we are of the opinion that the contract between appellant and appellee was valid. It was only in partial restraint of trade. It was limited in time to the period of five years, and in space to the City of Chicago. One element of the value of the business transferred by appellant to appellee was the probability, that the customers of the former would continue to trade with the latter, and this probability was increased and the value of the purchase enhanced by the agreement of appellant not to engage in the same business in Chicago for five years. Such an agreement was, in part, an inducement to appellee to make the purchase and was based upon a sufficient consideration. Appellant was at liberty to engage in any other business, or in the same business in any other place than Chicago. There was, therefore, only a limited restraint upon him as a tradesman, and not upon trade generally. Where one person is restrained from doing a particular business in a particular place, competition is left open to all others, and there is no injury to the public. The person restrained, in such case, merely yields to another the use of what he has disposed of to that other for value. The limitation here did not go beyond what was necessary for the protection of appellee in the prosecution of the business purchased by him, and was, therefore, reasonable."

There are many cases in other States very similar to this case and the issues raised herein. One of the leading cases is Granger v. Craven, 159 Minn. 296, 199 N. W. 10, where the facts were that the defendant physician was employed by another physician under a written contract providing that after the termination thereof the defendant would not engage in the practice of medicine and surgery directly or indirectly or as an employee of anyone else in Rochester, nor within twenty miles thereof, for three years after such

189

termination. After termination of the contract defendant immediately opened an office in Rochester for the practice of medicine and surgery. An injunction was granted plaintiff and on appeal to the Supreme Court of Minnesota the injunction order was affirmed. This case clearly holds that irreparable damage to the employer will be presumed to arise from the employee's breach of the restrictive covenant unless defendant be restrained by injunction from the breach of that covenant, and clearly holds that no evidence need be shown that substantial injury would follow a breach, and the injuries sustained would be the kind of injury for which the legal remedy is inadequate. We are quoting at some length from this case for the reason that the court discusses clearly some of the chief issues that arise in the case at bar. There the court said:

"We cannot agree that public policy so limited plaintiff's right to say on what conditions he would admit the defendant to his employment. We decline to adopt a rule so abridging the right of contract, which is no small part of the liberty of the citizen. We do not so far forget that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. . . .

"We consider that public policy requires the enforcement of this contract as the parties wrote it, rather than judicial permission for another surgeon to practice in Rochester. Public policy cannot be said very emphatically to demand the latter result.

"In this case we must assume that, when the contract was made, plaintiff had a very substantial practice and the good will of many patients; that in Rochester and vicinity, he enjoyed a professional establishment

190

of a profitable nature—the result of nearly thirty years of professional effort. It was an establishment, the maintenance of which was dependent entirely on the continued good will of the patients and their consequent adherence to plaintiff.

"It is obvious, therefore, that, when he employed defendant as an assistant, plaintiff had a legitimate interest to protect. The presence of such an interest is the first thing to look for when such a contract as this is challenged. Its presence is necessary to uphold the agreement and make it enforceable in equity or at law. . . .

"The only other inquiry is whether, plaintiff having a legitimate interest to protect, the protection given is itself legitimate, i. e., reasonable. There should be no question there. As to time, the limit of three years is clearly reasonable. As to area, the considerations arising from the speed and convenience of modern facilities of communication and transportation put equally beyond question the exclusion of the defendant from Rochester and the territory within a radius of 20 miles.

"Such an employee as was the defendant gets an acquaintance and standing with his employer's patients from which, even though he is just an average man, he is bound to reap substantial benefit the moment he leaves his employer's office and opens his own in the same vicinity. Many of the old patients will have come to like and trust him. They will follow him even though he goes so far in the exercise of good faith as to urge them all to remain with his former employer.

". . . But the trouble is, in the professions, that, without solicitation and even with meticulous good faith on the part of the employee, the good will and establishment of the employer will be substantially impaired the moment the employee who has served faithfully and well, begins competition with him. Therefore, it is only a reasonable protection of legitimate

interest for a professional man, about to employ another on such terms as to give the latter access to the acquaintance and confidence of his clients, to require of the employee a covenant not to enter into competition with the employer for a reasonable time after the relationship is terminated.

"So far as possible invasions of plaintiff's good will are concerned, there is no distinction between a contract such as we have here and a partnership. As a partner Dr. Craven would have had no more opportunity for the acquisition of some of Dr. Granger's good will than he had as an assistant. And, on the dissolution of the partnership, the partner continuing business may exact from the retiring partners appropriate covenants not to re-engage in a competing business."

In another well-considered case, Proctor v. Hansel, 205 Iowa 542, 218 N. W. 255, in considering a somewhat similar contract between physicians, the court said:

"There can be no question of the power of a court of equity, in such a situation as is disclosed in the instant case, to enforce the contract by injunctive process, and not leave the injured party to the sole remedy of an action for damages in a court of law."

The original partnership agreement here was made March 31, 1948 between the nine original doctor partners, including Dr. Sawyer, who is the first named party in the preamble thereto. Section 6 (Covenant not to Compete) of Article IV (Withdrawal and Retirement), which is involved in this suit, read, so far as material, exactly the same then as it reads now except the area of restriction originally provided was within a radius of fifty miles of Kankakee. On January 1, 1951 two additional doctor partners were admitted into the partnership and two separate memoranda of partnership agreement were executed by each new partner respectively and by all the other partners by which

192

the new partners were so accepted and each agreed to be bound by the agreement. On June 26, 1951 a separate "Memorandum to Partnership Agreement" was executed by all the then eleven doctor partners substituting a new Section 6 in lieu of the original, which, as indicated, is identical to the original form thereof, so far as material, except the area of restriction then and now provided is within a radius of twenty-five miles of Kankakee (instead of fifty miles). On August 1, 1952 one additional doctor partner was admitted into the partnership and an additional separate memorandum of partnership agreement was executed by him and all the other then partners by which he also was accepted and agreed to be bound by the agreement.

██ ██ Apparently the principal argument of the defendant Dr. Sawyer as to why the provision of the amended Section 6, Article IV, forbidding a voluntarily withdrawing doctor partner from practicing within a radius of twenty-five miles of Kankakee for five years after withdrawal is illegal and void as against public policy is to the effect that, arguing by inference from the stipulation, he says Kankakee is short of doctors, the removal of even one doctor, Dr. Sawyer, might seriously affect the public welfare, the public interest will be affected by his not there practicing for five years, the medical services available in the area will be impaired, and the public will be thereby injured. The defendant Dr. Sawyer's view evidently is that the burden of proof to establish the negative and contrary of those arguments is upon the plaintiffs. Under Ch. 110, Ill. Rev. Stats. 1953, par. 167, of the Civil Practice Act [Jones Ill. Stats. Ann. 104.043], "illegality,"—"that an instrument or transaction is either void or voidable in point of law,"—and "any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the plaintiff's complaint,"—are all affirma-

193

tive defenses, they must be plainly set forth in the defendant's answer, and, necessarily, the burden of proof as to an affirmative defense is on the defendant, not the plaintiff. We do not find any such alleged affirmative defenses plainly set forth in the defendant Dr. Sawyer's answer, and, beyond that, we do not find that he has at all satisfied the burden of proof resting on him in those respects. We cannot, from the stipulation and pleadings draw any such sweeping, generalized inferences, implications, arguments, and conclusions as Dr. Sawyer urges. There being, as Dr. Sawyer points out, no evidence as to whether any of these doctors are general practitioners, or specialists, or their training, professional ability, or ages, or what the effect, if any, on the public would be if Section 6, to which he agreed, is enforced and Dr. Sawyer is restrained from practicing within the twenty-five-mile radius for five years,—and, we may add, there being no evidence that seventy doctors are incapable of handling the medical needs of 90,000 people, or that Kankakee is short of doctors, or that requiring him to adhere to Section 6 would seriously affect the public welfare, or interest, or seriously impair the available medical services in the area, or that the public will be seriously injured, or any evidence of other possibly pertinent factors on this score, we cannot so conclude on this record.

■■ The provision in this agreement, therefore, preventing the defendant withdrawing partner from practicing within a radius of twenty-five miles of Kankakee for five years from the date of withdrawal being limited as to area and being limited as to time, being not greater than reasonably necessary to protect the fair and legitimate contract rights and interests of the remaining partners, is reasonable and not contrary to public policy, is supported by a sufficient legal consideration, and, a breach having occurred, it is a

negative restrictive covenant which may properly be enforced in equity by injunction.

We are also called on by the parties to decide if the contract herein, containing a forfeiture clause, provides for a penalty or for the payment of liquidated damages for a breach as set forth in Section 6 of the contract.

Paragraph 4 (Terms of Retirement or Withdrawal) of Article IV (Withdrawal and Retirement) of the agreement, so far as here material, provides in substance that when a partner voluntarily withdraws, as here, he shall receive 80% of the value of his partnership interest, in two equal annual installments, the first due thirty days after withdrawal, and the second to be evidenced by a note or notes of the remaining partners due one year later, with a privilege of prepayment of all or part thereof, the note or notes to be placed in escrow, the escrowee to deliver any unpaid note or notes to the withdrawing partner on the due date (one year later) unless ten days prior to the due date the remaining partners certify to the escrowee that the retiring partner has not complied with the clause, Paragraph 6 of the same article, preventing his subsequent practice within the radius of twenty-five miles of Kankakee for five years after withdrawal, and if they so certify the escrowee is to deliver the unpaid note or notes to the makers for cancellation, "it being the intention of the parties hereto that the retiring or withdrawing partner who has breached the provisions of Section 6 of this article, shall thereby forfeit a portion of the value of his partnership interest."

■ The defendant Dr. Sawyer's theory is that those provisions of Paragraph 4 fix the amount of damages to be paid the remaining partner if the withdrawing partner resumes practice within the twenty-five-mile radius area within five years of his withdrawal,—that the withdrawing partner has the right

195

to resume practice if he is willing to pay damages as so fixed,—and that the damages being so determined the plaintiffs have an adequate remedy and injunction will not lie. We cannot agree. The parties to the agreement do not call anything under Paragraph 4 "liquidated damages" or use the word "damages" therein; the only word they do use throwing any special light on what the last part of the paragraph means is "forfeit" and ordinarily that connotes a "penalty" and not "liquidated damages"; the unpaid portion one year after his withdrawal of the 80% of the value of the withdrawing partner's interest in the partnership being the only thing involved, so far as material, which is to be "forfeit" if he breach (*within that year*) the medical practice restriction, there is no necessary, logical, or inherently reasonable connection between whatever that uncertain sum might be and any damages, whatever they might be, properly resulting from his breach of that restriction *if he breached it within that year;* there is nothing there or elsewhere that says it is optional or alternative with the withdrawing partner to obey the clause as to medical practice restriction during that year or not obey it and give up that unpaid portion of the 80% of the value of his interest; and those provisions of Paragraph 4, lasting and extending as to a withdrawing partner for only one year after his withdrawal and having no application beyond that time, are not coincident and coordinate, and coextensive as to time and extent with the medical practice restriction in Paragraph 6 which lasts and extends for five years after such withdrawal.

The courts have found it very difficult to distinguish sometimes between a penalty and liquidated damages; for example, in Evans v. Mosely, 84 Kan. 322, 50 L. R. A. (NS) 889, the court said on this subject:

"There is no branch of the law on which a unanimity of decision is more difficult to find, or on which more

196

illogical and inconsistent holdings may be found. One theory is that the law abhors a forfeiture as nature abhors a vacuum, and that courts ought to frown with equal displeasure on anything which may be considered a forfeiture. Another theory is that close heed should be paid to the language used, distinguishing carefully between penalty and liquidated damages, with constant partiality toward a construction which favors the former; a third, that parties competent to contract and dealing at arm's length should be held to the plain meaning of their contracts, into which they have deliberately entered."

And in Van Buren v. Digges, 11 How. (U. S.) 461, at 477, 13 L. Ed. 771, at 777, the court said on this matter:

"The term 'forfeiture' imports a penalty; it has no necessary or natural connection with the measure or degree of injury which may result from a breach of contract or from an imperfect performance. It implies an absolute infliction regardless of the nature and extent of the causes by which it is superinduced. Unless, therefore, it shall have been expressly adopted and declared by the parties to be a measure of injury or compensation, it is never to be taken as such by Courts of Justice, who leave it to be enforced where this can be done in its real character, viz., that of a penalty."

An analysis of the contract herein clearly shows that,—

1. Nothing might be due one year after withdrawal by Dr. Sawyer; or

2. The entire installment might be due, in its entirety; or

3. Any amount from nothing to the full installment might be due.

The variable in the amount which might be due is clearly shown, and must have been so intended by the parties by their use of this phrase: "Shall thereby

197

forfeit a portion of the value of his partnership interest."

It is also clear that if the note or notes of the remaining partners were paid in full to the withdrawing partner, or the unpaid notes were delivered to the withdrawing partner one year after the effective withdrawal date, a breach, after these events, by the withdrawing partner would not call for the forfeiture of anything by the withdrawing partner. Inasmuch as in the instant case a breach or the nonperformance by a withdrawing partner of the act (that is, to refrain from the practice of medicine for the period of five years within twenty-five miles of Kankakee), from which damages might well result, could happen long after the second annual installment was paid in full by the remaining partners, this provision as to "forfeiture" could not have been considered by the parties as a provision for payment of liquidated damages for a breach or nonperformance.

The only answer of the defendant Dr. Sawyer to that possible dilemma of what happens if the withdrawing partner obeys the clause as to medical practice restriction for one year after his withdrawal, collects the then unpaid note or notes for the last annual installment then due on his 80% of the value of his interest, and then proceeds to violate Paragraph 6 by resuming practice within the twenty-five-mile radius and within the five-year period, to which situation Paragraph 4 has no application because it is not coincident, co-ordinate, and coextensive in time and extent with the medical practice restriction clause of Paragraph 6, is that in that event, Dr. Sawyer says, an injunction would lie against the withdrawing partner (if the public interest were not affected). But the meaning and construction of Paragraph 4 and Paragraph 6 must be determined as of the time the agreement and the amendment were made and cannot be permitted to depend on the vagaries and unknown and

198

uncertain happenstances of the parties' later acts. Where there is a question of whether an agreement (Paragraph 4) creates a penalty or liquidated damages it must be construed to be one or the other,—it cannot be held for some purposes at some times, and under some conditions to be a penalty and for other purposes, times, and conditions to be liquidated damages: Steer et al. v. Brown, 106 Ill. App. 361. There is nothing to indicate the parties considered a violation within one year after withdrawal by a withdrawing partner of Paragraph 6 restricting the resumption of practice to be essentially different in character and calling for essentially different possible remedies than the same violation thereof after that year and within the second, third, fourth, or fifth year after withdrawal. There is no reason to believe the parties meant that if such violation occurred *within the one year* after withdrawal there would be damages, that in that Paragraph 4 they were providing for liquidated damages to cover such event, that it was optional or alternative with the withdrawing partner to obey the restriction or not obey it and give up the unpaid portion of the value of his interest, that the remaining partners then had an adequate other remedy, and that no injunction would lie; *but* that if exactly the same violation occurred *after that year* and within the second, third, fourth, or fifth year after withdrawal there would be no damages, or if there were such would nevertheless not bar an injunction, no provision for liquidated damages was, or needed to be, provided for in that event, it was not then optional or alternative with the withdrawing partner to obey or not obey the restriction, the remaining partners then would have no other adequate remedy, and that then an injunction would lie. Construing the provision of Paragraph 4 in question to be a provision for a penalty, applicable as far as it goes under the circumstances therein indicated and in accordance with normal principles relat-

199

ing to penalties and any other law which may be in point if, as, and when it should ever, if at all, become effective and pertinent, and not as a provision for liquidated damages, or an option or alternative with the withdrawing partner, or a possible remedy which must in all events bar an injunction, more nearly, we believe, effectuates the intentions of the parties, gives full effect to both Paragraphs 4 and 6, and permits of a more consistent, cohesive, co-ordinate, and logical operation of the whole agreement.

██ ██ We consider it to be reasonably clear it is a provision for a penalty, but if we thought it doubtful whether it be for a penalty or liquidated damages the tendency and trend of the cases is to construe it as a penalty: In re Gelino's, Inc., 43 F.2d 832, 51 F.2d 875, cert. den. 284 U. S. 659, 52 S. Ct. 36, 76 L. Ed. 558; Goodyear Shoe Machinery Co. v. Selz, Schwab & Co., 51 Ill. App. 390, 157 Ill. 186; Mercer County v. Stupp Bros. Bridge & Iron Co., 115 Ill. App. 298; Van Kannel v. Higley, 172 Ill. App. 88; White v. Mandel Bros., 248 Ill. App. 313.

 We believe also that the five plaintiffs here have a right under the circumstances here presented, to prosecute this complaint for injunction in equity as individuals. We have carefully considered the case of Sindelare v. Walker, 137 Ill. 43. That case holds, in substance, that until a partnership has been dissolved, and a settlement had of the partnership affairs, and the plaintiff partner's individual interest in partnership assets has been determined there can be no ascertainment of his damages at law by reason of an alleged injury by a stranger allegedly acting in collusion with his copartner during the life of the partnership, and, he, therefore, had no standing in a court of law for money damages. Such is not the case here presented. We do not believe that Sindelare v. Walker is any authority for holding that the five plaintiffs here under the circumstances here presented could not maintain

200

a suit in equity for the injunction asked against breach of this restrictive covenant: Beard et al. v. Dennis, 6 Ind. 200. We are not here concerned with an attempted suit at law by a partner for damages to partnership assets occurring during the life of the partnership. The defendant withdrawing partner having ceased to be associated in the carrying on of the business such changed the relation of the partners and worked a dissolution of the former partnership, though not a termination of the partnership until the winding up of partnership affairs is completed, but such winding up, so far as the defendant withdrawing partner is concerned, had apparently been completed: Ch. 106½, Ill. Rev. Stats. 1953, pars. 29, 30 [Jones Ill. Stats. Ann. 97.29, 97.30]; Thanos v. Thanos, 313 Ill. 499; cf. Tichenor v. Newman, 186 Ill. 264; cf. Townsend et al. v. Gregory, 132 Ill. App. 192. And no act in contravention of any agreement between partners may be done rightfully without the consent of all partners: Ch. 106½, Ill. Rev. Stats. 1953, par. 18 (h) [Jones Ill. Stats. Ann. 97.18, subd. (h)].

Paragraph 5 of the complaint states that by the terms of said partnership agreement and the amendment thereto, dated June 26, 1951 each of said partners agreed with the others that in the event of any partner retiring or withdrawing from said partnership, he should not engage in the practice of medicine or surgery or radiology, either directly or indirectly, individually or as an employee within a radius of twenty-five miles of Kankakee for a period of five years from the date of such withdrawal or retirement from the partnership. Dr. Sawyer, the retiring partner, has admitted the averments of Paragraph 5 of the amended complaint. He, therefore, admits that "each of said partners agree with the others," and we perceive no reason why this agreement is not a joint and several obligation and covenant: Ch. 76, Ill. Rev. Stats. 1953, par. 3 [Jones Ill. Stats. Ann. 70.04]. We believe,

201

therefore, by the terms of the contract each of the partners have covenanted with the others in this respect, and we further believe that the right to restrain a breach is not necessarily a partnership claim which must necessarily be asserted by all the remaining partners or not at all.

Examine again the terms of retiring or withdrawal under Paragraph 4 of the contract. Section 2, under which Dr. Sawyer voluntarily withdrew, provided for payment under Paragraph 4 to him of 80% of his interest in the partnership in equal annual installments,—the first installment payable in cash thirty days after the effective date of the withdrawal, and the second installment to be paid by a note or notes of the remaining partners in favor of the retiring partner one year thereafter, with the privilege to the remaining partners of paying all or any part of the note before maturity,—the note or notes to be deposited with an escrow agent; the agent is to deliver any unpaid note or notes to the withdrawing partner upon due date (the same being one year after the date of the withdrawal), unless ten days prior to the due date the remaining partners certify in writing to the escrow agent that the withdrawing partner has not fulfilled the conditions of the agreement as contained in Section 6. If the remaining partners so certify then the agent shall turn over the remaining unpaid notes to the makers for cancellation, it being the intention of the parties that a withdrawing partner who has breached the provision of Section 6 will forfeit a portion of his partnership interest. Section 6 is as follows:

"Any partner who retires or withdraws under the provisions of Sections 1, 2, or 3 of this Article IV shall not engage in the practice of medicine or surgery or radiology, either directly or indirectly, individually, or as an employee or partner or assistant, within a radius

202

of fifty miles (later changed to twenty-five miles) of Kankakee, Illinois, for a period of five years from the date of his retirement or withdrawal."

■ The remaining partners who are plaintiffs here do not ask or claim anything under the forfeiture clause, and only ask enforcement of the agreement by injunction. This is a remedy more favorable to the defendant retiring partner than the remedy at law, for the equitable remedy only compels a party to abide by the agreement he executed, while the remedy at law would take from him the property he has in effect paid for and would operate in the nature of a punishment. An injunction then, to restrain the breach of the condition, if the condition is legal, merely implements the intention of the parties and is perfectly equitable and reasonable. The fact that in an agreement a penalty or forfeiture is imposed for doing a prohibited act is no obstacle to the issuance by equity of an injunction if it be otherwise proper. It may be observed that Dr. Sawyer in his pleading makes no offer to subject himself to the forfeiture provision of the contract, or waive any claim to the unpaid note of $7,541, except, if it be, by saying that the plaintiffs upon their certification to the escrow agent that he, Sawyer, has not fulfilled the conditions of the agreement restricting the subsequent practice of medicine, as contained in the partnership agreement, will become entitled to the cancellation and return of the note in the principal sum of $7,541. Whether they, or, for that matter, the other defendant partners, beside Dr. Sawyer, do or do not sometime so act under the agreement appears to be up to them, not Dr. Sawyer, and anything having to do with that is premature, not of record, and not now before us. We must accept the facts as they appear of record at the time the decree is entered. We cannot speculate on the future possible course of action, or

203

inaction, that any party here may take. We cannot guess at what some future possible state of facts may be or hypothesize what the law applicable then might be or what our then opinion might be on some theoretical controversy not yet arisen and not here presented.

Six of the remaining partners, made defendants in this suit, it must also be observed, admit the breach of the contract by Dr. Sawyer, but seek no relief of any kind against him or against any of the other parties to the suit, and that, of course, is their privilege but does not deprive the plaintiffs of any remedy they may otherwise be entitled to. All the necessary parties are in the suit. We think this answer of these six remaining partners defendants should be construed as indicating that they seek no forfeiture under the agreement as against Dr. Sawyer, nor do they seek any injunctive relief against him.

On the whole, we are of the opinion that the contract in question, signed by Dr. Sawyer, and the particular provision he as a withdrawing partner has violated, is not contrary to public policy; that the forfeiture provision in the contract is a provision for penalty and not for liquidated damages; and even if it were considered a provision for liquidated damages, injunction will nevertheless lie in this case to restrain a breach of the negative restrictive covenant.

The decree of the circuit court of Kankakee county, dismissing the amended complaint and denying the injunction is, therefore, reversed and the cause remanded with directions to issue the injunction as prayed for in the amended complaint.

Reversed and remanded, with directions.

DOVE, J., concurs.

WOLFE, P. J., took no part.