339 P.2d 504

Joseph W. MARSHALL, Ellwood T. Rees, David A. McClusky, George W. Warner, and Royal S. Cutler, Plaintiffs-Respondents,

v.

Fen COVINGTON, Defendant-Appellant.

No. 8775.

Supreme Court of Idaho.

May 15, 1959.

Benoit & Benoit, Twin Falls, for appellant.

Stephan, Stephan & Heap, Twin Falls, for respondents.

TAYLOR, Justice.

June 10, 1955, defendant (appellant) entered into a contract with the plaintiffs (respondents) copartners doing business at Twin Falls under the firm name and style of Twin Falls Clinic. All of the parties are doctors of medicine. At the time of the agreement defendant was 41 years of age,

had graduated from medical school in 1939; had had hospital experience; five years in the armed services medical corps; had engaged in general practice and had had one year of postgraduate schooling in obstetrics and gynecology; and at the time of the agreement was practicing in his specialty at Salt Lake City, Utah.

Some of the members of the partnership had been practicing their profession in Twin Falls for eleven years. The partnership had been in existence for approximately six years.

By the terms of the contract the plaintiffs agreed to employ defendant for a period of three years to perform professional services in the Twin Falls Clinic in the specialty of obstetrics and gynecology. The agreed salary was $750 per month for the first year, $833.33 for the second year, and $916.66 for the third year, plus $50 per month for the time served after defendant shall have obtained certification by the American Board of Obstetrics and Gynecology.

At the end of the three-year period "by mutual consent of the parties" defendant was to be given the opportunity of becoming associated with the plaintiffs as a partner. Paragraph 8 of the agreement provides:

"It is further agreed that party of the second part, upon separation from the Twin Falls Clinic for any reason whatsoever, shall not practice medicine or surgery within a radius of twenty-five (25) miles from Twin Falls, Idaho, for a period of three (3) years immediately following such separation."

Paragraph 11 in part provides:

"This agreement may be terminated by either party hereto for any just or reasonable cause by the party desiring to terminate this agreement giving to the other party notice in writing of his intention to terminate said agreement at least sixty (60) days prior to the time of desired termination. * * Termination of this contract prior to June 9, 1958, shall in no way invalidate the terms and provisions of Paragraph 8 of this contract."

Defendant rendered services at the clinic under the agreement from June 10, 1955, to June 10, 1958. Defendant terminated the relationship voluntarily after giving the sixty days' notice as provided by the contract. He then commenced the practice of medicine and surgery within the proscribed area and now carries on such practice and will continue to do so unless restrained.

During the existence of the partnership its members rendered service to patients in Twin Falls and surrounding territory with a radius in excess of 100 miles. About 26,000 patients had registered for treatment or service at the clinic. Slightly less than 50% of the patients resided in Twin

Falls, and the remainder in the territory outside Twin Falls.

During the period of the contract relationship, defendant performed his services at the clinic in a satisfactory manner. A substantial portion of plaintiffs' obstetrical and gynecological practice was turned over to defendant. He was introduced to, met, treated, and advised many of plaintiffs' patients, and in so doing obtained their confidence and good will. During the time of his service defendant obtained certification by the American Board of Obstetrics and Gynecology, based upon case histories and reports developed from his experience and practice at the clinic.

Plaintiffs fully performed their part of the agreement.

Other pertinent facts as found by the court are:

"When the defendant discontinued his employment with the plaintiffs and shortly thereafter, 37 patients transferred to the defendant and his private practice from the practice of the plaintiffs and defendant. There were patients who were under the defendant's care while employed by the plaintiffs. Patients' request for transfer of records to the defendant continue.

"In Twin Falls there is one other doctor besides the defendant who is 'Board Certified' in the same specialty as the defendant. There is also one other doctor who limits his practice entirely to obstetrics and gynecology and he is well qualified in obstetrics and gynecology. Within the 25-mile radius of Twin Falls there are 50 to 60 medical doctors of which 35 to 40 handle obstetrical and gynecological cases.

"When a doctor is 'Board Certified' he must confine his practice to the certified specialty, except in emergencies or expose himself to disciplinary proceedings.

"That the terms and provisions of said Contract of Employment are fair, reasonable and just and are not unconscionable in any respect.

"That the said acts of defendant are in violation of said Contract of Employment and are a continuing injury to and interference with the plaintiff's professional practice and constitute great and irreparable damage and prejudice to the plaintiffs and such can not be fully compensated in damages."

The district court entered judgment enjoining the defendant from practicing medicine and surgery within a 25-mile radius of Twin Falls for a period of three years from June 10, 1958. Defendant brought this appeal from the judgment.

Defendant contends the restrictive covenant is unenforceable because it is unrea-

sonable, inequitable and oppressive, and that it is against public policy.

He first urges a distinction should be drawn between restrictive covenants ancillary to the sale of a business or property, and such covenants when contained in a contract of employment. From the authority cited—Annotation 45 A.L.R.2d 96, 97, 98—it appears the courts which recognize a distinction, do so upon two grounds: First, the purchaser of a business may be entitled to protection against mere competition by his vendor, whereas an employer may not be so protected against his employee. Second, the freedom of an employee to pursue a lawful calling and thus to support himself and family is entitled to greater weight in equity than the freedom of a vendor to reengage in business. Basic to both propositions is the fact that in the sale of a business the vendor has usually transferred to the purchaser, for a consideration, the good will of his business. Whereas, the relationship of employer and employee does not contemplate a transfer of good will. These considerations find expression in a more strict construction of the restrictive covenants and the reasonableness of the limitations imposed, rather than in a hardfast rule denying enforcement to such covenants in an employment contract.

The problems involved in the application of restrictive covenants ancillary to contracts of employment, as to both duration and territorial extent, and the decisions of the courts thereon, are ably and exhaustively discussed and annotated in 41 A.L.R.2d 15 and 43 A.L.R.2d 94. See also earlier annotations, 9 A.L.R. 1456, 20 A.L.R. 861, and 52 A.L.R. 1362, and generally as to contracts involving physicians, surgeons, dentists and others engaged in healing professions, 58 A.L.R. 156. From these numerous decisions the general rule emerges that such covenants will be enforced when they are reasonable, as applied to the covenantor, the covenantee, and the general public; they are not against public policy, and any detriment to the public interest in the possible loss of the services of the covenantor is more than offset by the public benefit arising out of the preservation of the freedom of contract.

"It is a firmly established doctrine that a member of one of the learned professions, upon becoming assistant to another member thereof, may, upon a sufficient consideration, bind himself not to engage in the practice of his profession upon the termination of his contract of employment, within a reasonable territorial extent, as such an agreement is not in restraint of trade or against public policy. Such contracts have been held valid where made by physicians, surgeons, and others of the healing profession." Annotation—

Restriction on Practice of Physician, 58 A.L.R. 156, at page 162.

In the recent case of Bauer v. Sawyer, 1955, 6 Ill.App.2d 178, 126 N.E.2d 844, the appellate court of Illinois considered a partnership agreement, executed by twelve doctors, in which it was agreed that a withdrawing partner would not practice within 25 miles of Kankakee, where the partnership business was located, for a period of five years. There were 70 doctors within the restricted area and approximately 90,000 population. After reviewing Illinois decisions and decisions from other states, the court said:

"The provision in this agreement, therefore, preventing the defendant withdrawing partner from practicing within a radius of 25 miles of Kankakee for 5 years from the date of withdrawal being limited as to area and being limited as to time, being not greater than reasonably necessary to protect the fair and legitimate contract rights and interests of the remaining partners, is reasonable and not contrary to public policy, is supported by a sufficient legal consideration, and, a breach having occurred, it is a negative restrictive covenant which may properly be enforced in equity by injunction." 126 N.E.2d at page 851.

In that case, as here, the defendant also urged that the restriction was violative of public policy and against the public interest in that it would deprive the people of Kankakee and vicinity of the needed services of the defendant. To this the court said the evidence would not support the conclusion that the 70 doctors present in the area were incapable of handling the medical needs of the population, or that the elimination of the defendant from that area would seriously affect the public welfare, or seriously impair the available medical services in the area.

In Proctor v. Hansel, 205 Iowa 542, 218 N.W. 255, 58 A.L.R. 153, the Iowa court was concerned with a contract between an established osteopathic physician and one entering the practice at Ames, Iowa. The established practitioner took the younger man into his office, agreeing to pay him compensation on a percentage basis for a period of one year, after which it was agreed that the employee would not compete with the first party in the city of Ames for a period of three years. The court said:

"* * * There is nothing in the terms and provisions of the contract in the case at bar that renders it against public policy, or so oppressive, unreasonable, or unconscionable that a court of equity should withhold its hand and refuse to uphold and enforce it." 205 Iowa at page 545, 218 N.W. at page 257, 58 A.L.R. at page 155.

In Granger v. Craven, 159 Minn. 296, 199 N.W. 10, 52 A.L.R. 1356, a physician and surgeon, with a long established practice in the city of Rochester, took into his office a younger practitioner, under a contract by the terms of which the employee was to take charge of the ear, nose and throat department of plaintiff's business and be compensated by a division of the receipts from that department. Either party could terminate the agreement upon 30 days' notice. The contract provided that after termination the employee would not engage in the practice of medicine or surgery in Rochester nor within 20 miles thereof for a period of three years. As to the contention of the defendant that the restriction was a violation of public policy, the court said:

"* * * We cannot agree that public policy so limited plaintiff's right to say on what conditions he would admit defendant to his employment. We decline to adopt a rule so abridging the right of contract, which is no small part of the liberty of the citizen. We do not so far forget that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. * * *

"Courts scrutinize carefully all contracts limiting a man's natural right to follow any trade or profession anywhere he pleases and in any lawful manner. But it is just as important to protect the enjoyment of an establishment in trade or profession, which its possessor has built up by his own honest application to everyday duty and the faithful performance of the tasks which every day imposes upon the ordinary man." 159 Minn. at page 299, 199 N.W. at page 11, 52 A.L.R. at pages 1358–1359.

After recognizing that the covenantee had a legitimate interest to protect, the court said:

"The only other inquiry is whether, plaintiff having a legitimate interest to protect, the protection given is itself legitimate, i. e., reasonable. There should be no question there. As to time, a limit of three years is clearly reasonable. As to area, the considerations arising from the speed and convenience of modern facilities of communiciation and transportation put equally beyond question the exclusion of defendant from Rochester and the territory within a radius of 20 miles.

"The test is one of reasonableness. Such a contract is not unlawful if the restriction is no more than necessary to afford fair protection to the cove-

nantee and is not injurious to the interests of the public. The restraint put on defendant by his contract meets the test of reasonableness at all points. It protects a legitimate interest in a legitimate manner." 159 Minn. at page 300, 199 N.W. at page 12, 52 A. L.R. at page 1359.

The Minnesota court further held that damages at law would not afford adequate protection to the plaintiff and that injunction was the proper remedy.

■ As to the reasonableness of the territorial extent of the restriction, the correct rule is stated by the annotator in 43 A.L.R.2d at page 164:

"\* \* \* the territorial scope of a restrictive covenant will be held reasonable if the area of the restraint is not broader than the territory throughout which the employee during the term of his employment was able to establish contact with his employer's customers."

■ A three year time restriction generally is not unreasonable. Annotation, 41 A.L.R.2d 15.

■ We conclude that the restriction here imposed is reasonable both as to duration and territorial extent. It is not against public policy. The detriment or inconvenience to the public which may be involved is not sufficient to justify denial to the plaintiffs of the legitimate protection provided for by their contract. Hardship to the defendant is not, standing alone, a ground for granting relief. He was sui juris. He does not contend that he was misled in entering into the agreement, or that there was any failure on the part of plaintiffs to perform. As applied to him the limitations are not unreasonable nor unduly oppressive, and being supported by a consideration, he is bound by his contract to comply. Such a restrictive covenant in a contract between members of a learned profession may be regarded as distasteful and out of harmony with the dignity of professional men; but the courts must be guided by the overriding public interest in the preservation of the freedom of contract.

Appellant further urges that the restrictive covenant is unenforceable for want of mutuality. He calls attention to the provision of the contract under which it could be terminated by either party upon 60 days' notice.

"\* \* \* The main thing urged is that plaintiff had the right to terminate the contract on 30 days' notice. It is a fairly complete answer to say that defendant had the same right. In this there was complete mutuality

of privilege and right. But the controlling consideration against the argument of inequity, and alleged lack of consideration, is that for over two years, defendant was employed by plaintiff under the contract. Each of them seems to have performed to the satisfaction of the other, at least until notice of termination was served." Granger v. Craven, 159 Minn. 296, 199 N.W. 10, 14, 52 A.L.R. 1356, at 1362.

Appellant's principal contention, however, with respect to mutuality, is that a contract for personal services, not being enforceable at its inception, cannot be made so by subsequent events, and hence cannot thereafter be enforced by either party. He cites Houser v. Hobart, 22 Idaho 735, 127 P. 997, 43 L.R.A.,N.S., 410; Childs v. Reed, 34 Idaho 450, 202 P. 685; Zaring v. Lavatta, 36 Idaho 459, 211 P. 557; Elliott v. Craig, 45 Idaho 15, 260 P. 433; Thomas v. Stevens, 69 Idaho 100, 203 P.2d 597. An examination of these cases reveals that the contracts involved remained wholly or partially executory on both sides, at the time the actions thereon were brought. Although the court in those cases said mutuality must exist at the inception of the contract, that rule must be limited in its application to the facts of those cases. The annotation in 22 A.L.R. 2d 508 deals with mutuality of remedy as essential to granting of specific performance. The annotator therein states the applicable rule at page 549, as follows:

"One who has performed his own obligations under a contract requiring personal services may maintain a suit for specific performance notwithstanding those obligations were of such nature that the defendant could not have had the same remedy against him. This proposition may be regarded either as an exception to the early English rule that a reciprocal right to specific performance must have coincided with the contract, or as within the later view that the plaintiff's right to the remedy is to be determined as of the beginning of suit. No mutuality is then required because none is needed."

In Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686, 688, we were concerned with the contract for personal services fully performed. We there said:

"* * * The general rule is that where the plaintiff has fully performed the services contracted for the objection of want of mutuality of remedy no longer exists as a ground for denying specific performance. (Citations) 'Want of mutuality cannot be predicated of an agreement wholly executed by the party seeking specific performance,' Chicago, M. & St. P.

Ry. Co. of Idaho v. United States, 9 Cir., 218 F. 288, 301; Henry Keep Home v. Moore, 198 Okl. 198, 176 P.2d 1016. The reason for the rule is that, where the plaintiff has fully performed, the court is primarily concerned with the question as to whether or not the services can be adequately compensated at law, or must equity decree specific performance to do complete justice." 70 Idaho at page 455, 221 P.2d at page 688.

The same rule was followed in Ashbauth v. Davis, 71 Idaho 150, 227 P.2d 954, 32 A.L.R.2d 361.

In the case before us the plaintiffs fully performed their part of the agreement. That performance cannot be retracted and is now irrevocable. The acquaintance with patients, and the good will obtained by defendant by reason of that performance cannot be taken from him, nor can plaintiffs be adequately compensated in damages, since the detriment is a continuing one, and difficult of proof.

The judgment appealed from is affirmed.

Costs to respondents.

SMITH, KNUDSON and McQUADE, JJ., and MARTIN, D. J., concur.

PORTER, C. J., not participating.