848 P.2d 444

**Dana McCANDLESS, Plaintiff–Appellant,**

v.

**Bobby Edgar CARPENTER, Defendant–Respondent.**

No. 19426.

Court of Appeals of Idaho.

March 2, 1993.

Dunn & Clark, Rigby, for plaintiff–appellant.  Robin D. Dunn argued.

Edwin Wagner, Idaho Falls, for defendant-respondent.

SWANSTROM, Judge.

This case involves a dispute between two irrigation pipe repair business operators after one of them sold some used pipe repair equipment to the other.  The seller brought this action to enforce noncompetition provisions of the sale contract between the two, requesting injunctive relief and liquidated damages.  After trial, the district court ruled that the noncompete agreement lacked sufficient consideration to support specific performance of the agreement.  The court also declined to enforce the liquidated damages provision based on the conclusion that the noncompete clause was unenforceable.  The seller has appealed, contending that the court erred in making these rulings.  For reasons stated below, we affirm.

## Background Facts

Bobby Carpenter was seasonally employed by Ken Hopkins in the irrigation pipe repair business in southern Idaho between 1972 and 1984.  In about September, 1985, Dana McCandless purchased Hopkins's pipe repair business.  Carpenter then worked for McCandless during the summers each year until 1989.

Because McCandless wanted to expand his business he planned to buy a new machine.  In March, 1990, he learned that Carpenter was interested in purchasing his old pipe-repairing machinery.  McCandless decided he could sell his old machine and equipment and buy two new machines.  After talking by phone with Carpenter, McCandless wrote a letter to Carpenter stating that he would sell Carpenter specifically listed equipment and tools (hereinaf-

ter "the equipment") for $6,000. Carpenter arranged for financing, met with McCandless, and told him he was prepared to purchase the equipment for $6,000. At the time of these negotiations and the subsequent sale, Carpenter was no longer employed by McCandless; that employment had ended several months before.

McCandless had his attorney draft a contract of sale for the equipment to Carpenter. On March 26, 1990, the parties met at McCandless' home where Carpenter looked at the equipment, gave his $6,000 check to McCandless and signed the contract which McCandless presented, entitled "Contract on Sale of Personal Property and Noncompete Agreement." Although Carpenter testified that he had first learned of the noncompete agreement when the written contract was presented to him, he also testified that he had read the contract and signed it without any coercion. Part of the contract language relative to the noncompetition agreement is as follows:

> 3. Buyer recognizes that he will receive special training, trade secrets, and experience which has been acquired by seller in the course of his business. Further, buyer recognizes that said trade secrets, training and general information acquired by seller are valuable and consideration which passes with the property described above.
>
> 4. Buyer agrees not to establish or open any business, trade or occupation similar to the business operated by seller, or in any manner to become interested, directly or indirectly, either as an employee, owner, partner, agent, stockholder, director, or otherwise, in any such business, trade, or occupation, within the counties of Jefferson, Clark, Teton, Fremont, Madison, Bingham or Bonneville, State of Idaho. The period of time for this restriction is the term of three (3) years from the date hereof.

It is undisputed that Carpenter, after consulting an attorney, violated the restrictive covenants in the contract by using the equipment to repair irrigation pipe in the seven-county area during the year 1991. Some of his customers had been customers of McCandless during the years that Carpenter had worked for McCandless. Learning this, McCandless brought this action.

### Consideration For The Covenant Not To Compete

Notwithstanding the recitations in the contract, Carpenter argued to the trial court that the covenant not to compete was void because it lacked consideration. Part of his argument involved the contention that a contract of sale was fully completed before the written agreement was even presented to him and signed by the parties.[1]

Carpenter concedes the principle that courts will generally not examine the adequacy or sufficiency of consideration, except as it may bear upon competency or consciousness of action. *Enders v. Wesley W. Hubbard & Sons, Inc.*, 95 Idaho 590, 513 P.2d 992 (1973). However, Carpenter asserts that the district court acted correctly in examining the consideration transferred and in relying upon the following rule in its written decision:

> Still a court of equity will ordinarily refuse to order specific performance of the contract if the consideration supporting it is grossly disproportionate to the injury incurred by the covenantor or the benefit accruing therefrom to the covenantee.

8 Am.Jur. Proof of Facts 2d *Covenant Not to Compete* § 2, 663, 674 (1976).

■ Initially we note that "[a] written instrument is presumptive evidence of a consideration." I.C. § 29–103; *see also W.L. Scott, Inc. v. Madras Aerotech, Inc.*, 103 Idaho 736, 653 P.2d 791 (1982). "Once this presumption arises, the party seeking to assert the affirmative defense of lack of consideration must establish that defense

---

1. Carpenter also testified that the contract was presented to him only after he had examined the equipment and had given McCandless a check for $6,000. McCandless disputed this sequence of events. The district court made no finding on the point, and it is not essential to determine whether a sale had actually occurred before the written agreement was signed.

by a preponderance of the evidence." *Id.* at 741, 653 P.2d at 796. The presumption may be rebutted by any substantial evidence. It has been held, for example, "where a deed contains recitals of fact purporting to evidence receipt or acknowledgement of payment, such recitals may be challenged as untrue, and parol evidence is admissible for that purpose. The law uniformly allows the admission of parol evidence to prove that a recital of fact is untrue." *Vanoski v. Thomson,* 114 Idaho 381, 383, 757 P.2d 244, 246 (Ct.App.1988). Of course, in the present case, the burden of showing the insufficiency of consideration is upon Carpenter. The district court's written "Findings of Fact, Conclusions of Law and Judgment" show that he was aware of this burden. For the most part, McCandless does not dispute the court's findings. Accordingly, we need only to determine whether the court's findings regarding "consideration" are supported by substantial evidence.

In addition to the facts we have already related, the district court made other findings which we summarize as follows:

1. As a result of ... [his employment with Ken Hopkins prior to 1985], Carpenter was experienced in the irrigation pipe repair business and acquainted with ranchers in Eastern Idaho who required this service.

2. [McCandless] also worked for [Hopkins] for a short period of time in 1985.

3. In 1985, McCandless purchased equipment from [Hopkins] and went into the business of repairing sprinkler irrigation pipe.

....

5. McCandless purchased customer lists, purchased additional equipment worked to maintain and improve his equipment and worked to improve the efficiency of his business operation in order to enhance the profitability of his business.

6. McCandless ... [seasonally employed Carpenter as "contract labor" between 1985 and 1989 to assist him in his sprinkler pipe repair business]. This employment relationship was terminated in 1989.

7. The customer lists that McCandless had purchased were not "trade secrets" since Carpenter already had the benefit of any such information before the restrictive covenant was signed and these customer lists were available for purchase by anyone.

8. Upon termination of this employment relationship in 1989, Carpenter could have used any knowledge that he had gained from working for McCandless either as an employee of another entity involved in the pipe repair business or as a proprietor of a business involved in the pipe repair business.

....

14. There is no evidence in the record before this court that Carpenter received any "knowledge, trade secrets and start up knowledge" referred to in the March 26, 1990 agreement from McCandless at the time of the execution of the said agreement, or thereafter.

15. The evidence establishes that Carpenter's knowledge about the techniques used in McCandless' pipe repair business, his customers, were all known by Carpenter at the time his employment was terminated in 1989 and prior to his execution of the "Contract of Sale of Personal Property and Noncompete Agreement" at issue in this action.

Although McCandless does dispute finding number 15, that finding is supported by McCandless' own testimony elicited during his cross-examination. From its findings, the district court concluded that Carpenter, by virtue of executing the March 26, 1990 contract, received nothing of value in addition to the listed equipment for which he had paid full value. The court specifically found that the "main purpose of the contract ... was to restrict Carpenter from competing with McCandless." Consistent with these findings, the court concluded that McCandless was the only party that benefitted from the noncompetition agreement and the liquidated damages provision. We agree.

The restrictive covenant operated in one direction only. It purported even to prohibit Carpenter from being employed in the pipe repair business by any competitor to McCandless within the seven-county area. On the other hand, Carpenter was given no protection in any area of the state against competition from McCandless. In fact, McCandless testified that he was considering "franchising" the business even into areas where Carpenter was permitted to do business, outside of the seven-county area. To this end, McCandless had restrictive language in the contract requiring Carpenter to charge his customers a "minimum repair cost" per section of pipe. He testified that he wanted "his franchisees, whether it be in Western Idaho or the American Falls–Twin Falls Area, ... to be able to compete on equal footing." Clearly, though, this was no sale of a franchise. This was merely a cash sale of used repair equipment and tools, sold " 'as is' with no warranties or guarantees." *Compare Shakey's, Inc. v. Martin*, 91 Idaho 758, 430 P.2d 504 (1967).

Substantial evidence, which came into the record at trial without objection, rebuts the presumption arising from the contract that Carpenter received consideration for his agreement not to compete. McCandless argues, however, that the trial record did contain other evidence of consideration given to Carpenter for the covenant. McCandless notes his own testimony that if Carpenter had not agreed to the noncompete covenant he would have charged more than $6,000 for the equipment. Carpenter testified that, in his opinion, the value of the equipment was $6,000. Although McCandless testified that the equipment was worth more, on the basis of his letter to Carpenter which itemized the value of various pieces of equipment, totalling $6,000, the district court specifically found that the equipment had a market value of $6,000. This finding dispels the argument made by McCandless that Carpenter. paid less than market value for the equipment in consideration for the promise not to compete.

The district court stopped short of saying that the noncompetition agreement was devoid of all consideration. The court did say "that the noncompetition agreement ... is not supported by any consideration that will support specific enforcement in a court of equity since any consideration was grossly disproportionate to the injury incurred by Carpenter or the benefit accruing therefrom to McCandless."

When the trial court sits without a jury, the court must weigh conflicting evidence, and its findings will not be set aside unless clearly erroneous. *Abbott v. Nampa School Dist. No. 131*, 119 Idaho 544, 808 P.2d 1289 (1991); I.R.C.P. 52(a). We are thus charged with determining whether the evidence supports the court's findings of fact and whether the findings of fact support the conclusions of law. *Morris v. Frandsen*, 101 Idaho 778, 621 P.2d 394 (1980). We exercise free review regarding the application of law to the factual findings. *State v. Montague*, 114 Idaho 319, 756 P.2d 1083 (Ct.App.1988). Applying these principles, we conclude that there was sufficient, although conflicting evidence, to support the court's findings regarding the consideration which passed between the parties in this transaction, and we will uphold the findings.

I

This Court has previously noted the general rule regarding restrictive covenants as stated in *Marshall v. Covington*, 81 Idaho 199, 203, 339 P.2d 504, 506 (1959), which is that they

will be enforced when they are reasonable, as applied to the covenantor, the covenantee, and the general public; they are not against public policy, and any detriment to the public interest in the possible loss of the services of the covenantor is more than offset by the public benefit arising out of the preservation of the freedom of contract.

*Dick v. Geist*, 107 Idaho 931, 933, 693 P.2d 1133, 1135 (Ct.App.1985). The general rule is that a noncompete agreement is enforceable if it is supported by consideration, ancillary to a lawful contract, reasonable and consistent with public policy. 54 Am. Jur.2d *Monopolies, Etc.* § 511 (1971). The

Idaho Supreme Court has held that non-compete agreements are enforceable in a variety of contexts including the sale of a business,[2] employment relationships,[3] principal-agent relationship where agent forfeited commissions because of competitive activity,[4] and the sale of a franchise.[5] The Court has also held that certain noncompete agreements are unenforceable. *See Insurance Center, Inc. v. Taylor,* 94 Idaho 896, 499 P.2d 1252 (1972) (covenant which did not address scope, duration, and territory was unenforceable as a matter of law).[6]

■ The district court noted that none of the foregoing cases involved a situation similar to the present one. The restrictive covenant here was not incident to a sale of a business where a *purchaser* might have a legitimate interest to protect the goodwill purchased with the business. The court found that there were no "trade secrets" to be protected. This was not the sale of a franchise, nor was the agreement here incident to a contract of employment. The restrictive covenant here, although one between a former employer and his former employee, was incident to a sale of equipment used to repair aluminum sprinkler pipe, a business which involves a "relatively simple labor skill."

McCandless has cited no cases in Idaho or from any other state upholding a restrictive covenant attached to such a transaction. Neither are any cases cited upholding a restrictive covenant which is designed to protect a former employer against competition by a former employee where the contract containing the restrictions is made months after employment has ceased and without substantial consideration to the former employee for the covenant.

For guidance in this unusual situation, the district court looked to appellate decisions from other states where employers have sought to enforce noncompetition agreements which were incident to contracts of employment. One such case was *Bryceland v. Northey,* 160 Ariz. 213, 216, 772 P.2d 36, 39 (App.1989). There, the court said:

> Restrictive covenants in a contract that tend to prevent an employee from pursuing a similar vocation after termination of employment are disfavored and will be strictly construed against the employer. A contrasting rule applies to a covenant given in the sale of a business. As to the latter, courts are more lenient because of the need to see that good will is effectively transferred.[7] The burden is on the employer to prove the extent of its protectable interest. [Citations omitted; footnote added.]

**2.** *See Vancil v. Anderson,* 71 Idaho 95, 227 P.2d 74 (1951) (covenant by *seller* not to compete with purchasers of restaurant-tavern business, including furniture, fixtures, merchandise and leasehold interest); *Ryska v. Anderson,* 70 Idaho 207, 214 P.2d 874 (1950) (similar covenant by *seller* of hardware business, including leasehold rights, personal property and good will).

**3.** *See Marshall v. Covington,* 81 Idaho 199, 339 P.2d 504 (1959) (covenant by doctor, in contract of employment with clinic, not to compete with clinic upon termination of employment, upheld); *Stipp v. Wallace Plating, Inc.,* 96 Idaho 5, 523 P.2d 822 (1974) (restrictive covenant in employer's pension trust plan, providing for forfeiture of benefits due from employer if terminated employee competes with employer, upheld).

**4.** *See Anderson v. Farm Bureau Mut. Ins. Co.,* 112 Idaho 461, 732 P.2d 699 (Ct.App.1987). The covenant in this case did not bar competition by agent after termination of agency, but it did provide for forfeiture of commissions after termination if there was "competitive activity" on the part of the former agent. The case recognizes that noncompetition covenants in agency contracts will be upheld "if they are *ancillary to employment* and are reasonable in their application to the covenantor, the covenantee and the general public." 112 Idaho at 470, 732 P.2d at 708 (emphasis added) (citing *Insurance Center, Inc. v. Taylor,* 94 Idaho 896, 499 P.2d 1252 (1972); *Marshall v. Covington, supra,* n. 3).

**5.** *See Shakey's Inc. v. Martin,* 91 Idaho 758, 430 P.2d 504 (1967).

**6.** We note that where a covenant not to compete is ancillary to another valid contract, some courts require only a valid consideration to support the contract of sale or employment and do not require independent consideration for the non-compete agreement. *See e.g., National Recruiters, Inc. v. Cashman* 323 N.W.2d 736, 740 (Minn.1982) (citing *Modern Controls, Inc. v. Andreadakis,* 578 F.2d 1264 (8th Cir.1978)).

**7.** *Accord, Stipp v. Wallace Plating, Inc.,* 96 Idaho 5, 523 P.2d 822 (1974).

The court went on to say that "[a]n employer may not enforce a post-employment restriction on a former employee simply to eliminate competition *per se.*" *Id.* The court also held that "[a] restrictive covenant is not enforceable to prevent a former employee from using the skills and talents he learns on the job in a new job." *Id.*, at 217, 772 P.2d at 40.

The district court also relied upon a similar ruling in *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (Tex.1987). In *Hill,* the court refused to enforce a noncompetition clause between a franchisor and a franchisee after the franchisee had lost his franchise and later attempted to sell his trim repair services within an area defined in the agreement.

The court in *Hill* acknowledged that restrictive covenants have a legitimate role to play, principally in the sales of businesses where the *seller* covenants not to compete with the buyer, and specifying that an employee, upon discharge, will not compete with the former employer. The court enumerated the four criteria which such covenants must meet in order to be deemed reasonable. *Id.*, 725 S.W.2d at 170–71. The court went on to say:

> But, the covenant before us today cannot be clearly categorized as either a covenant incident to the sale of a business or a post-employment covenant to prevent utilizing special training or knowledge. *Hill obtained his skills as an auto trim repairman prior to his franchise agreement with Mobile Auto Trim.*

725 S.W.2d at 171 (emphasis added). The court found the same consideration deficiencies that we have noted in the present case. Hill received no value for his promise not to compete. He had already acquired the specialized training and knowledge before he signed the agreement. Mobile Auto Trim made no reciprocal promises not to compete with Hill outside the proscribed area. The court said:

> Today, we are presented with an individual who is skilled in auto trim repair and are asked to prohibit him from engaging in a common calling. We refuse to do so. The longevity of the reasonableness approach has been its flexibility. "The changing conditions of life modify from time to time the reasons for determining whether the public interest requires that a restrictive stipulation shall be deemed void as against public policy." *Samuel Stores, Inc. v. Abrams,* 94 Conn. 248, 252, 108 A. 541, 543 (1919). In 1982, the Utah Supreme Court refused to enforce a hearing aid distributor's noncompetition agreement against a former salesman, setting forth the standard which we adopt today: *"[c]ovenants not to compete which are primarily designed to limit competition or restrain the right to engage in a common calling are not enforceable."* *Robbins v. Finlay,* 645 P.2d 623, 627 (Utah 1982).

725 S.W.2d at 172 (emphasis added). *Accord, Boisen v. Petersen Flying Service, Inc.*, 383 N.W.2d 29 (Neb.1986). We hold, upon the facts of the present case, that this is appropriate authority to follow. As the district court noted, the restrictive covenant at issue is not ancillary to a contract in which it is generally recognized that there may be a legitimate interest to protect. *See, e.g.,* Restatement (Second) of Contracts § 188 comment e (1981), recognizing, as does Idaho, the legitimacy of noncompetition covenants ancillary to employment contracts, the sale of a business, partnerships agreements, and principal-agent agreements. The transaction here fits none of these categories and therefore gives even less reason to enforce a restrictive covenant in this case than in the cases cited.[8]

---

8. There are reported cases which have held that covenants not to compete ancillary to a sale of personal property are enforceable. *See e.g. Oregon Steam Navigation Co. v. Winsor,* 87 U.S. (20 Wall.) 64, 22 L.Ed. 315 (1873); *Tri–Continental Financial Corp. v. Tropical Marine Enterprises,* 164 F.Supp. 1 (S.D.Fla.1958) *aff'd* 265 F.2d 619 (5th Cir.1959); *Dunlop v. Gregory,* 10 N.Y. 241 (1851). These are cases involving the sale of steamboats and ferry boats with covenants that the vessels will not be used by the purchasers on certain established runs or between certain ports of call. None of these cases have been cited to us, and we do not consider them to be apposite to the facts of this case.

The district court held that the noncompete agreement was the main purpose of the contract. We cannot disagree with the court on this point. The court was not persuaded otherwise by McCandless' testimony that his purpose in having the contract drafted "was to have a legal sale of the equipment and to limit his ability to associate his name with mine and to damage my business that I was going and still am on going [sic]." The contract itself, when read in the context of this sale, is the best indicator of its main purpose.

For the foregoing reasons, we conclude that the district court did not err in refusing to enforce the restrictive covenant upon the facts of this case. Having reached this conclusion, it is unnecessary for us to address any issues relative to the provisions in the contract for liquidated damages. We affirm the judgment entered by the court.

### Attorney Fees: Trial

 Carpenter timely filed a request in the district court for an award of costs and attorney fees. I.R.C.P. 54(d)(5), 54(e)(1). McCandless filed his objection thereto. I.R.C.P. 54(e)(6); however, the record on appeal does not include that objection. The court awarded costs and attorney fees to Carpenter as the prevailing party. Fees were awarded under I.C. § 12–120(3) because the court held the transaction between the parties was a "commercial transaction" within the meaning of the statute.

McCandless contends that the court erred in awarding attorney fees under I.C. § 12–120(3) but, because we have not been furnished with a complete record on which to review the court's ruling, we will not address the correctness of the ruling. *Carpenter v. Double R Cattle Co., Inc.*, 108 Idaho 602, 701 P.2d 222 (1985).

### Attorney Fees: Appeal

 Carpenter has requested attorney fees for defending this appeal. He has not cited the statute upon which he relies for an award of attorney fees, but his argument and the case authority cited indicates he is relying upon I.C. § 12–121 for the award. To justify an award of fees under this section we must find that the appeal was entirely frivolous, unreasonable or without foundation. *Magic Valley Radiology Associates, P.A. v. Professional Business Services, Inc.*, 119 Idaho 558, 563, 808 P.2d 1303, 1308 (1991); *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). However, we conclude that McCandless has raised genuine issues not previously decided by any appellate court in Idaho. Accordingly, we decline to award attorney fees on appeal under I.C. § 12–121.

Costs to respondent. No attorney fees awarded.

WALTERS, C.J., and SILAK, Acting Judge, concur.