17 P.3d 308

**PINNACLE PERFORMANCE, INC.,**
an Idaho corporation, Plaintiff–
Counterdefendant–Appellant,

v.

**Lynn C. HESSING, dba BAHF,**
Defendant–Respondent,

and

Casinovations, Incorporated, a Washing-
ton corporation, Defendant–Coun-
terclaimant–Respondent.

Casinovations Incorporated, a Wash-
ington corporation, Third Party
Plaintiff–Respondent,

v.

**Cliff Seusy, Third Party Defendant.**

No. 25824.

Court of Appeals of Idaho.

Jan. 12, 2001.

**366**

Huntley, Park, Thomas, Burkett, Olsen & Williams, Boise, for appellant. William H. Thomas argued.

Brassey, Wetherell, Crawford & McCurdy, Boise, for respondent. Andrew C. Brassey argued.

PERRY, Judge.

Pinnacle Performance, Inc., an Idaho corporation, appeals from the district court's order granting summary judgment in favor of Lynn C. Hessing, dba BAHF, and Casinovations, Incorporated, a Washington corporation. We affirm.

## I.

## BACKGROUND

In an effort to manufacture and sell a single-deck card shuffler, Casinovations contacted Western Electronics, Inc., who agreed to find an engineering firm to develop a prototype card shuffler. Western Electronics contacted Pinnacle, who agreed to develop the prototype. On February 26, 1997, Pinnacle entered into a written employment agreement with Hessing. Pinnacle agreed to hire Hessing as an independent contractor, and Hessing agreed to develop a prototype of the single-deck card shuffler. Clause 9 of the written agreement between Pinnacle and Hessing provided the following:

> *Non–Competition.* Contractor [Hessing] agrees to not offer, sell, or trade his services directly to Company [Pinnacle] clients, both current and past, for a period of two (2) years from completion of Contractor's work for the Company, without first providing an opportunity to contract the work through the Company. In the event that the Company declines to pursue the contract within 30 days of written notice, the Company must provide a written release to the Contractor, within the aforementioned 30 day period, giving permission to the Contractor to contract the work directly without Company involvement. After releasing a particular project to the Contractor, the Company still reserves the right of first refusal for any subsequent business opportunities within the original non-competition period.

Pursuant to its language, the employment agreement was to be in effect for a period of approximately four months, terminating on June 11, 1997.

In March 1997, Casinovations abandoned the development of the single-deck shuffler in favor of producing a six-deck card shuffler from a pre-existing design. Pinnacle notified Hessing, who then began work on the six-deck card shuffler. In April 1997, Hessing delivered, at Pinnacle's request, a prototype of the six-deck card shuffler to Casinovation's offices in Las Vegas. Although the prototype did not operate perfectly, Casinovations remained interested in the project. In June 1997, Casinovations contacted Hessing about employment as an in-house mechanical engineer. Hessing took the offer under consideration. At some point, Hessing faxed to Casinovations a copy of his employment agreement with Pinnacle. Around June 15, 1997, Hessing informally began working directly for Casinovations. On June 30, 1997, Hessing signed an employment agreement with Casinovations. While working for Casinovations, Hessing completed the development of the six-deck card shuffler and began working on another multi-deck card shuffler.

On September 12, 1997, Pinnacle filed a complaint against Hessing alleging that Hessing had breached the covenant not to compete contained in the employment agreement by going to work for Casinovations and had thereby caused damages to Pinnacle in the amount of $24,296.61. On August 3, 1998, Pinnacle filed an amended complaint, adding Casinovations as a defendant and alleging that Casinovations had committed the tort of interference with contract by hiring Hessing. On May 21, 1999, Hessing and Casinovations filed a motion for summary judgment, arguing that the covenant not to compete was unenforceable as a matter of law. After a hearing, the district court granted the motion for summary judgment. Pinnacle appeals.

## II.

## ANALYSIS

### A. Covenant Not to Compete

On appeal, Pinnacle argues that the district court erred in granting summary

judgment in favor of Hessing and Casinovations. We note that summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct.App.1994).

 Pinnacle contends that the district court erred in concluding that the covenant not to compete in the employment agreement between Pinnacle and Hessing was unenforceable as a matter of law. Covenants not to compete in an employment contract are disfavored and will be strictly construed against the employer. *See Stipp v. Wallace Plating, Inc.*, 96 Idaho 5, 6, 523 P.2d 822, 823 (1974); *Shakey's Inc. v. Martin*, 91 Idaho 758, 762, 430 P.2d 504, 508 (1967); *Marshall v. Covington*, 81 Idaho 199, 203, 339 P.2d 504, 506 (1959); *McCandless v. Carpenter*, 123 Idaho 386, 391, 848 P.2d 444, 449 (Ct.App. 1993). In order to be enforceable, a covenant not to compete must be ancillary to a lawful contract, supported by adequate consideration, and consistent with public policy. *McCandless*, 123 Idaho at 390, 848 P.2d at 447. In addition, a covenant not to compete contained in an employment contract must be reasonable as applied to the employer, the employee, and the public. *See Stipp*, 96 Idaho at 6, 523 P.2d at 823; *Insurance Ctr., Inc. v. Taylor*, 94 Idaho 896, 899, 499 P.2d 1252, 1255 (1972); *Marshall*, 81 Idaho at 203, 339 P.2d at 508; *McCandless*, 123 Idaho at 390, 848 P.2d at 447. In other words, a covenant not to compete is reasonable only if the covenant: (1) is not greater than is necessary to protect the employer in some legitimate business interest; (2) is not unduly harsh and

oppressive to the employee; and (3) is not injurious to the public. *See* RESTATEMENT (SECOND) OF CONTRACTS § 188 (1981). A covenant not to compete will be held unenforceable if the covenant is unreasonable in duration, geographical area, or scope of activity. *See Magic Lantern Prods., Inc. v. Dolsot*, 126 Idaho 805, 807, 892 P.2d 480, 482 (1995); *Insurance Ctr., Inc.*, 94 Idaho at 900, 499 P.2d at 1256.

 We begin our analysis by determining whether Pinnacle had a legitimate business interest worthy of protection. The burden is on the employer to prove the extent of its protectable interest. *McCandless*, 123 Idaho at 391, 848 P.2d at 449. The general rule is that an employer is not entitled to protection against ordinary competition. 54A AM. JUR.2d MONOPOLIES § 916 (1996). However, employers are entitled to protect their businesses from the detrimental impact of competition by employees who, but for their employment, would not have had the ability to gain a special influence over clients or customers. *See Amex Distributing Co., Inc. v. Mascari*, 150 Ariz. 510, 724 P.2d 596, 605 (Ct.App.1986); *American Software USA, Inc. v. Moore*, 264 Ga. 480, 448 S.E.2d 206, 208 (1994); *Holloway v. Faw, Casson & Co.*, 319 Md. 324, 572 A.2d 510, 515 (1990); *Professional Business Services Co. v. Rosno*, 256 Neb. 217, 589 N.W.2d 826, 831 (1999); *General Med. Corp. v. Kobs*, 179 Wis.2d 422, 507 N.W.2d 381, 387 (Ct.App. 1993). Thus, "the employer has a protectable interest in the customer relationships its former employee established and/or nurtured while employed by the employer, and is entitled to protect itself from the risk that a former employee might appropriate customers by taking unfair advantage of the contacts developed while working for the employer." *W.R. Grace & Co. v. Mouyal*, 262 Ga. 464, 422 S.E.2d 529, 531 (1992). *See also* 54A AM. JUR.2d MONOPOLIES § 919 (1996).

In the instant case, Pinnacle entered into an employment contract with Hessing, placing Hessing in direct contact with Casinovations. We conclude that Pinnacle possessed a legitimate business interest in the customer

relationship developed by Hessing through his contact with Casinovations and that Pinnacle's interest in that customer relationship is worthy of protection.

The second step of our analysis is to determine whether the covenant not to compete in the employment contract between Pinnacle and Hessing was a reasonable means of protecting Pinnacle's legitimate business interest. The core provision in the covenant not to compete provided the following: "Contractor agrees to not offer, sell, or trade his services directly to Company clients, both current and past, for a period of two (2) years from completion of Contractor's work for the Company, without first providing an opportunity to contract the work through the Company."

■■■■ On its face, the covenant not to compete lacks a geographical limitation. Hessing and Casinovations argue that a covenant not to compete which lacks such a limitation is per se unenforceable. We disagree. "In order to be enforceable, a covenant not to compete must be *reasonable* in geographic scope." *Magic Lantern*, 126 Idaho at 807, 892 P.2d at 482 (emphasis added). A number of jurisdictions have held that a broad geographical limitation may be considered reasonable if the scope of activity is limited to a small class of persons with whom contact is prohibited. *See Eichmann v. National Hosp. and Health Care Serv., Inc.*, 308 Ill. App.3d 337, 241 Ill.Dec. 738, 744–45, 719 N.E.2d 1141, 1147–48 (1999); *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 213 (Ind.Ct.App.1982); *Schott v. Beussink*, 950 S.W.2d 621, 627 (Mo.Ct.App.1997); *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin*, 765 S.W.2d 743, 746 (Tenn.Ct.App. 1987). As "the specificity of limitation regarding the class of person with whom contact is prohibited increases, the need for limitation expressed in territorial terms decreases." *Seach*, 439 N.E.2d at 213; *see also W.R. Grace & Co.*, 422 S.E.2d at 532; 6A CORBIN ON CONTRACTS, § 1394 (1992 Supp.). We agree that an otherwise overly broad geographical limitation may be considered reasonable if the class of persons with whom contact is prohibited is sufficiently limited. For example, no geographical limitation may be required if the covenant not to compete is limited to a very few, readily identifiable persons with whom contact is prohibited. However, such a determination may only be made upon the facts and circumstances of each individual case. We therefore reject a rule that a covenant not to compete which lacks an expressed geographical limitation is per se unenforceable.

■■■■ We must now determine whether the other terms provided in the covenant not to compete in the instant case are sufficiently limited such that its lack of an expressed geographical limitation can be considered reasonable. Pinnacle contends that the lack of a geographical limitation in the covenant not to compete was reasonable because the scope of the prohibited activity was limited to Pinnacle's clients. As stated above, Pinnacle has a protectable business interest in the customer goodwill developed by Hessing while working for Pinnacle. Such a business interest is reasonably protected by prohibiting Hessing from providing services to those clients with whom Hessing developed customer goodwill. However, a prohibition against doing business with an employer's clients, without regard to whether a relationship existed between the client and employee, is an overbroad means of protecting the employer's interest in the goodwill developed by the employee. *American Software*, 448 S.E.2d at 209. The covenant not to compete in the instant case unreasonably prohibited Hessing from providing services to Pinnacle's clients, both current and past, without regard to whether Hessing ever had any contact with these clients, especially in light of the fact that the employment contract between Pinnacle and Hessing was limited to the relatively short period of four months. By failing to reasonably limit the scope of the prohibited activity to those clients with whom Hessing had contact, the prohibitive impact of the covenant not to compete was greater than necessary to protect Pinnacle's legitimate business interest.

■■■■ In addition, the covenant not to compete prohibited Hessing from providing any service to Pinnacle's clients, current and past, after the termination of employment. Because the term "services" is not expressly

defined in the covenant not to compete, it fails to limit the scope of activities that Hessing is prohibited from offering, selling, or trading. A covenant not to compete which prohibits an employee from working in any capacity or which fails to specify with particularity the activities that the employee is prohibited from performing is too overbroad and indefinite to be considered reasonable. *See National Teen-Ager Co. v. Scarborough,* 254 Ga. 467, 330 S.E.2d 711, 713 (1985); *American Family Life Assurance Co. v. Tazelaar,* 135 Ill.App.3d 1069, 90 Ill.Dec. 789, 482 N.E.2d 1072, 1075 (1985). The covenant not to compete in the instant case unreasonably prevents Hessing from working in any capacity for all current and past clients of Pinnacle regardless of geographic location after the termination of his employment. Consequently, the prohibitive impact of the covenant not to compete was unduly harsh and oppressive to Hessing.

Based upon the discussion above, we conclude that the covenant not to compete in the employment contract between Pinnacle and Hessing failed to reasonably limit the prohibited "services" and the clients for whom Hessing could provide those services. As a result, we must further conclude that the lack of an expressed geographical limitation in the covenant not to compete in the instant case cannot be considered reasonable. It appears patently unreasonable to prohibit an employee who was hired for a period of only four months to work on one project from thereafter performing any services for any past and present clients in any geographical area for a period of two years. Consequently, the covenant, as written, was an unreasonable means of protecting Pinnacle's business interest in the customer goodwill developed by Hessing while working for Pinnacle.

 Having determined that the covenant not to compete was unreasonable as written, we now turn to Pinnacle's argument that the district court erred in refusing to judicially modify the covenant not to compete in order to make the covenant reasonable. The Idaho Supreme Court has sanctioned the modification of otherwise unreasonable covenants not to compete. *See Insurance Ctr., Inc. v. Taylor,* 94 Idaho 896, 899, 499 P.2d 1252, 1255 (1972). In so doing, the Court explained the following:

> It is the conclusion of this Court that the cases which authorize a modification of restrictive covenants ancillary to employment agreements are more consistent with the inherent concerns of a court of equity-fairness and reasonableness. Adoption of the modification principle allows a court to escape the rule of arbitrary refusal to enforce a covenant which, while unreasonable or indefinite in some of its terms, nevertheless serves to protect a legitimate interest of the parties or the public as the case may be.... [T]his Court seeks to provide flexibility to determining remedies available to the parties and the public. Consequently, enforcement is variable upon the circumstances of each case. Rather than choosing between absolute enforcement or unenforcement, there will be a wide range of alternatives available to meet the particular facts of the case being tried.

*Insurance Ctr.,* 94 Idaho at 899–900, 499 P.2d at 1255–56. Nevertheless, a covenant not to compete may not be modified to make it reasonable if the covenant is "so lacking in the essential terms which would protect the employee" such that the trial court is no longer modifying but rewriting the covenant. *Insurance Ctr.,* 94 Idaho at 900, 499 P.2d at 1256.

In *Insurance Ctr.,* the Idaho Supreme Court reviewed a covenant not to compete ancillary to an employment agreement between an insurance agency and two agents. The covenant provided, in part:

> The Agent agrees and promises that after his termination as an Agent of the Agency, he will refrain from selling life or accident and health policies and certificates to any insureds of the Agency or to any member of an association or group serviced by the Agency. The Agent also agrees not to disturb in any way the Agency structure or interfere or molest the business of the Agency.

*Insurance Ctr.,* 94 Idaho at 896 n. 1, 499 P.2d at 1252 n. 1. In reviewing the covenant, the Court concluded that the group of people with whom the agents were prohibited from selling policies was unreasonably overbroad.

The Court also concluded that the covenant was unreasonable because it lacked a geographical limitation and failed to supply the time within which the covenant would be enforced. The Court held that the covenant not to compete was "so lacking in the essential terms which would protect the employee, namely a limitation on time, area, and scope of activity, that the covenant is as a matter of law unenforceable." *Insurance Ctr.*, 94 Idaho at 900, 499 P.2d at 1256. Consequently, the Court concluded that the trial court had erred in attempting to modify the covenant to make it reasonable.

In the instant case, the covenant not to compete failed to reasonably limit the geographical area, the prohibited "services," and the clients for whom Hessing could provide those services.[1] In order to make the covenant reasonable, the district court would have been required to do more than just modify a portion of the covenant. The district court would have had to rewrite essentially the entire covenant not to compete to make the covenant reasonable under the facts of this case.

On appeal, Pinnacle argues that "Hessing never would have been hired by Casinovations ... were it not for Pinnacle's hiring Hessing to work on Casinovations' project" and that the covenant not to compete at issue in this case should have been interpreted by the district court in such a way that would require Hessing "to pay a price for this competitive activity." However, the mere fact that a protectable business interest exists does not automatically justify the enforcement of an unreasonably drafted covenant not to compete. Pinnacle's proposed interpretation of the covenant not to compete would have required the district court to rewrite nearly all of the substantive terms of the covenant. Such a comprehensive modification of a covenant not to compete is prohib-

ited by the holding in *Insurance Ctr. Inc.*, 94 Idaho at 900, 499 P.2d at 1256. The district court therefore did not err in refusing to modify the covenant not to compete contained in the employment contract between Pinnacle and Hessing.[2]

## B. Attorney Fees

On appeal, respondent requests attorney fees pursuant to I.C. § 12–120(3), which provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

> The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

If a contract claim is of a type embraced within the statute, the proponent's failure to prove the existence of the alleged contract does not insulate that party from liability. *Atwood v. Western Const., Inc.*, 129 Idaho 234, 240, 923 P.2d 479, 485 (Ct.App.1996). Therefore, attorney fees are allowed when the defendant has been successful in defeating such a contract claim. *Atwood*, 129 Idaho at 241, 923 P.2d at 485. This Court has previously held that actions on employment contracts are subject to the attorney fee provisions of I.C. § 12–120(3). *See id.*

The gravamen of the instant case was the enforceability of a covenant contained in an

---

1. The two-year time period contained in the covenant not to compete has not been challenged on appeal. As a result, we need not determine whether such an extended period of time is reasonable in light of the fact that the employment contract was limited to a four-month period.

2. Based upon our conclusion, we find it unnecessary to consider whether requiring Hessing to provide an opportunity to contract future work

through Pinnacle, *i.e.*, a right of first refusal, was a reasonable or viable means of enforcing the covenant not to compete contained in the employment contract between Pinnacle and Hessing. We note, however, that such a means of enforcing the covenant may create a situation where a third party, wishing to hire Hessing, would simply be unwilling to contract the future work through Pinnacle.

employment contract. Consequently, Hessing is entitled to attorney fees on appeal pursuant to I.C. § 12–120(3) for his successful defense of Pinnacle's claims.

## III.

## CONCLUSION

Based upon the foregoing, we conclude that the covenant not to compete contained in the employment contract between Pinnacle and Hessing was unenforceable as a matter of law. Consequently, we hold that the district court did not err in granting summary judgment in favor of Hessing and Casinovations. Attorney fees and costs are awarded to respondent, Hessing, on appeal.

Chief Judge SCHWARTZMAN, concurs.

Judge Pro Tem GUTIERREZ, dissenting.

I respectfully dissent. While I concur that Pinnacle had a protectable business interest in the customer goodwill developed by Hessing, I do not agree that the covenant not to compete unreasonably prevents Hessing from working in any capacity.

The majority holds that "services" is not expressly defined and therefore fails to limit the scope of activities that Hessing is prohibited from offering, selling, or trading. To ascertain the intention of the parties, a court must view a contract as a whole and consider it in its entirety. *Canyon View Irrigation Co. v. Twin Falls Canal Co.*, 101 Idaho 604, 619 P.2d 122 (1980). In this case, the majority does not find it necessary to address the clause in the covenant not to compete that requires Hessing to "first provid[e] an opportunity to contract the work through [Pinnacle]" and the clause regarding "releasing a particular project to [Hessing]..."

Hessing was an engineer who developed specialized products. The parties necessarily contemplated the fact that Hessing could create products directly for Pinnacle's clients in competition with Pinnacle's interests. Indeed, that is exactly what happened in this case. In my opinion, the covenant not to compete does not unreasonably restrict Hessing. He is free to compete in all lines of business unrelated to product development.

Hessing is also free to compete in product development after giving Pinnacle the right of first refusal to any product or project for any of Pinnacle's past or current customers. This is a reasonable restriction that is neither unduly harsh nor oppressive on Hessing's part.

Additionally, I would hold that the district court erred in refusing to modify the covenant not to compete to narrow the geographic scope. As explained in *Insurance Ctr., Inc. v. Taylor*, 94 Idaho 896, 899, 499 P.2d 1252–1255 (1972), "the modification principle allows a court to escape the rule of arbitrary refusal to enforce a covenant which, while unreasonable or indefinite in some of its terms, nevertheless serves to protect a legitimate interest of the parties or the public as the case may be."

The majority holds that the covenant not to compete unreasonably prohibited Hessing from providing services to Pinnacle's clients, both current and past, without regard to whether Hessing had any contact with those clients. Because the covenant failed to reasonably limit the geographic scope of the prohibited activity, the majority determines that the covenant could not be considered reasonable. I would hold that the district court should have used its equitable powers to provide a reasonable geographic limitation. The district court should have limited the geographical area to "[Pinnacle clients], both current and past, with whom Hessing had had contact." This would not rewrite the covenant, but would modify it to allow enforcement. Pinnacle clearly had a legitimate business interest in the customer relationship developed by Hessing through his contact with Casinovations. The district court should have modified the covenant to protect that interest.

As stated in *Insurance Ctr.*, "enforcement is variable upon the circumstances of each case." *Id.*, 94 Idaho at 899, 499 P.2d at 1256. In this case, the facts could not be more compelling. Unlike the development of general commodity, this case involved a specialized field of engineering, a specific commodity and a specific supplier. Pinnacle contracted with Hessing to develop a prototype of the single-deck card shuffler

for Casinovations in February, 1997. A month later, Casinovations abandoned the development of the single-deck shuffler. Pinnacle next requested Hessing work on a six-deck card shuffler on behalf of Casinovations. A month after that, Hessing delivered the prototype to Casinovations, who then approached him to work in-house as a mechanical engineer. Hessing contracted with Casinovations and completed the development of the six-deck card shuffler. Hessing continued to be employed by Casinovations and began working on another multi-deck card shuffler. Hessing would not have been hired by Casinovations but for Pinnacle's relationship with Casinovations. The covenant supplied a restriction on time and scope of activity. The geographic area could be reasonably restricted to those clients, past and present with whom Hessing has had contact. To hold otherwise only leads to an inequitable and unjust result. Therefore, I would reverse and remand.

Accordingly, I would award attorney fees on appeal to Pinnacle under I.C. § 12–120(3) as the prevailing party on appeal.

For each of these reasons, I respectfully dissent.